## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 7 |
| | : Case No. 11-10334 (KJC) |
| AES Thames L.L.C., | : |
|           Debtors. | : |
| | : |
| Charles M. Forman, | : |
| Chapter 7 Trustee, | : |
| | : Adversary Proceeding |
|         Plaintiff, | : No. 13-50406 (KJC) |
| | : |
| vs. | : |
| | : |
| P&M Brick LLC, | : |
| | : |
|        Defendant. | : |
| | : |
| | : |

## TRUSTEE'S BRIEF IN OPPOSITION TO
## DEFENDANT'S MOTION TO AMEND ITS ANSWER

**McCARTER & ENGLISH, LLP**
Katharine L. Mayer (DE #3758)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
Telephone: (302) 984-6300
Facsimile: (302) 984-6399
kmayer@mccarter.com

-and-

**FORMAN HOLT ELIADES & YOUNGMAN LLC**
Harry M. Gutfleish, Esq.
Matteo Percontino, Esq.
80 Route 4 East, Suite 290
Paramus, NJ 07652
Telephone: (201) 845-1000
Fax: (201) 845-9112
hgutfleish@formanlaw.com
mpercontino@formanlaw.com
*Counsel to Charles M. Forman, the Chapter 7 Trustee*

Dated: January 21, 2014

# TABLE OF CONTENTS

**Page No.**

TABLE OF AUTHORITIES……………………………………………………iii

STATEMENT OF NATURE AND STAGE OF PROCEEDINGS……………...1

SUMMARY OF ARGUMENT……………………………………………………..2

STATEMENT OF FACTS…………………………………………………………...3

LEGAL ARGUMENT……...……………………………………………………..9

    A.  Rule 15(a)(2)……………………………...…………………………...9

    B.   The Defendant's Proposed Conduit Defense Is Futile…………………..10

        1.  As A Creditor, The Defendant Cannot Assert That It Was
           A Conduit……………………………………………………………10

        2.  The Defendant's Allegations Do Not Establish A Plausible
           Conduit Defense……………………………………………...12

    C.  The Defendant Has Failed To Explain Its Undue Delay In Seeking
      To Amend……………………………………………………………17

    D.  Allowing Leave to Add the Conduit Defense is Unduly Prejudicial…..18

CONCLUSION…………………………………………………………………….20

ME1 17051066v.1

## <u>TABLE OF AUTHORITIES</u>

### *CASES*

*Bayer Cropscience AG v. Dow Agrosciences LLC,* 2012 WL 1253047
(D. Del. Apr. 12, 2012)...…………………………………………………………12

*Carpenter v. Churchville Greene Homeowner's Ass'n,* 2011 WL 4711961
(W.D.N.Y. Sept. 29, 2011)…………………………………………………………18

*Cradle IP, LLC v. Texas Instruments, Inc.,* 2013 WL 2285043
(D. Del. May 23, 2013)…………………………………………………….....17, 18

*Cureton v. Nat'l Collegiate Athletic Ass'n,* 252 F.3d 267 (3d Cir. 2001)……17, 18

*E.E.O.C. v. Boeing Co.,* 843 F.2d 1213 (9th Cir. 1988)…………………………18

*Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir. 2009)……………………...13

*In re Ameriking, Inc.,* 2006 WL 539006 (Bankr. D. Del. Mar. 2, 2006)………..13

*In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410 (3d Cir. 1997)..……..10

*In re CVEO Corp.,* 327 B.R. 210 (Bankr. D. Del. 2005)………………………..13

*In re Cypress Restaurants of Georgia, Inc.,* 332 B.R. 60
(Bankr. M.D. Fla. 2005)…………………………………………………………14

*In re Enron Corp.,* 367 B.R. 373 (Bankr. S.D.N.Y. 2007)……………………...18

*In re Fleming Companies, Inc.,* 347 B.R. 163 (Bankr. D. Del. 2006)…………..13

*In re Gruppo Antico, Inc.,* 359 B.R. 578 (Bank. D. Del. 2007)…………………13

*In re Lambertson Truex, LLC,* 458 B.R. 155 (Bankr. D. Del. 2011)………..13, 16

*In re Lenox Healthcare, Inc.,* 343 B.R. 96 (Bankr. D. Del. 2006)………10, 13, 15

*In re Mortgage Lenders Network, USA, Inc.,* 395 B.R. 871
(Bankr. D. Del. 2008)……………………………………………………………18

*In re Suburban Motor Freight, Inc.,* 114 B.R. 943 (Bankr. S.D. Ohio 1990)…...19

*In re Summit Metals, Inc.,* 477 B.R. 484 (Bankr. D. Del. 2012)………………...12

*In re Toy King Distributors, Inc.* 256 B.R. 1 (Bankr. M.D. Fla. 2000)……...10, 14

*In re U.S. Interactive, Inc.,* 321 B.R. 388 (Bankr. D. Del 2005)………………...16

*In re Vision Metals, Inc.*, 311 B.R. 692 (Bankr. D. Del. 2004)…………………17

*Miller Products Co., Inc. v. Veltek Associates, Inc.* 218 F.R.D. 425
(3d Cir. 1997)……………………………………………………………………10

*Nelmark v. Helms,* 2003 WL 1089363 (N.D.Ill. Mar. 11, 2003)………………...16

*Zubulake v. UBS Warburg LLC*, 231 F.R.D. 159 (S.D.N.Y. 2005)………....18, 19

ME1 17051066v.1

### STATEMENT OF NATURE AND STAGE OF PROCEEDINGS

On February 1, 2011 (the "Petition Date"), AES Thames, L.L.C. (the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §101 *et seq.* (the "Bankruptcy Code").  On January 23, 2012, the Court entered an Order converting the Debtor's case to a case under chapter 7 of the Bankruptcy Code.  On January 24, 2012, the Office of the United States Trustee appointed Charles M. Forman to serve as interim chapter 7 trustee (the "Trustee") for the Debtor's estate.  In accordance with section 702(d) of the Bankruptcy Code, the Trustee continues to serve as the chapter 7 trustee for the Debtor's estate.

On January 18, 2013, the Trustee filed a complaint against P&M Brick, LLC (the "Defendant") [Docket No. 1].  On April 10, 2013, the Defendant filed an answer to the complaint [Docket No. 5].  On June 20, 2013, the Court entered a Scheduling Order [Docket No. 11] establishing (a) December 31, 2013 as the deadline for fact discovery, (b) January 30, 2014 as the deadline for each party to provide expert reports for any issue for which such party bears the burden of proof, and (c) March 30, 2014 as the deadline to complete expert discovery  By Stipulation, the parties agreed to extend the time to complete fact discovery until January 31, 2014 [Docket No. 29].

On January 8, 2014, the Defendant filed its motion (the "Motion") to file an amended answer [Docket No. 30].

For the reasons set forth, the Trustee opposes the relief sought.

## SUMMARY OF ARGUMENT

In his complaint, the Trustee seeks to avoid under section 547(b) of the Bankruptcy Code ("Section 547(b)") and to recover under section 550(a) of the Bankruptcy Code ("Section 550(a)") three payments from the Debtor to the Defendant totaling $677,482.63 (the "Transfers") on account of invoice numbers 4712, 4722, 4990, and 5131 (the "Invoices") issued by the Defendant to the Debtor.

To date, the Defendant has admitted that the Debtor was indebted to it for amounts billed in the Invoices, the Debtor made the Transfers, the Defendant received and deposited the Transfers in a corporate bank account, and that the Defendant was the initial transferee of the Transfers. The bank statements produced by the Defendant demonstrate that the Transfers were deposited into an unrestricted bank account into which the Defendant deposited funds from sources other than the Debtor, and disbursed funds for purposes other than those underlying the debts billed in the Invoices.

Now, a year after being served with the Trustee's complaint, after the Trustee obtained fact discovery and documents, after the Trustee's attorneys deposed the Defendant's designated representative, and without any explanation why it waited so long, the Defendant seeks authorization to file an amended answer to assert that it was a mere conduit of the Transfers. As explained below, the Defendant's motion must be denied because:

A.    The Defendant was a creditor of the Debtor at the time of each of the Transfers and was not, and cannot be found to be, a conduit.

B.    The Defendant's proposed conduit defense contradicts its admissions to date as well as the documents produced to date.

2

C.    The Defendant's proposed conduit defense is not supported by a single document produced to the Trustee, the Defendant's responses to the Trustee's interrogatories, or the testimony of the Defendant's designated representative.

D.    The Defendant's allegations are not sufficient to show that the Defendant could be held to be a conduit.

E.    Permitting the Defendant to file the proposed amended answer at this time would cause undue delay and would be unduly prejudicial to the Trustee.

## STATEMENT OF FACTS

Prior to the Petition Date, the Debtor owned and operated a coal-fired power plant located in Montville, Connecticut and maintained a bank account at Bank of America, N.A. (ending in 6888) (the "Disbursement Account").

On September 30, 2010, the Defendant issued invoice number 4712 to the Debtor requesting payment of $108,218.83 for 3,329.81 tons of limestone that it sold and shipped to the Debtor.  Also on September 30, 2010, the Defendant issued invoice number 4722 to the Debtor requesting payment of $99,481.20 for 3,060.96 tons of limestone that it sold and shipped to the Debtor.  The Debtor paid invoice numbers 4712 and 4722 by wire transfer from the Disbursement Account on November 5, 2010, which was received and deposited into the Defendant's business checking account at First Niagara Bank, N.A. (ending in 1424) (the "First Niagara Account").

On October 30, 2010, the Defendant issued invoice number 4990 to the Debtor requesting payment of $221,119.50 for 6,317.70 tons of limestone that it sold and shipped to the Debtor.  The Debtor paid invoice number 4990 by wire transfer from the

3

Disbursement Account on December 14, 2010, which was received and deposited into the First Niagara Account.

On November 23, 2010, the Defendant issued invoice number 5131 to the Debtor requesting payment of $248,663.10 for 7,104.66 tons of limestone that it sold and shipped to the Debtor.   The Debtor paid invoice number 5131 by wire transfer from the Disbursement Account on December 20, 2010, which was received and deposited into the First Niagara Account.

The Invoices are attached as Exhibit A to the Certification of Harry M. Gutfleish (the "Gutfleish Certification").   The First Niagara Account statements produced by the Defendant are attached as Exhibit B to the Gutfleish Certification.   The Defendant's responses to the Trustee's interrogatories are attached as Exhibit C to the Gutfleish Certification.

In paragraph 15 of its answer and proposed amended answer, the Defendant admits that it was the initial transferee of the Transfers.

All of the Invoices direct that payment shall be made payable to "P&M Brick, LLC."  In response to interrogatory number 8, the Defendant explained and conceded that that:

> Defendant received $207,700.03 on November 5, 2010 from the Debtor.
> Defendant received $221,119.50 on December 14, 2010 from the Debtor.
> Defendant received $248,663.10 on December 20, 2010 from the Debtor.
> All such payments were deposited into the [First Niagara Account].

In response to interrogatory number 9, the Defendant explained and conceded that "[e]ach of the Transfers was received by Defendant and applied to an invoice sent to Debtor for material and services provided by Defendant to Debtor."

4

In response to interrogatory number 10, the Defendant explained and conceded that:

> In general, P&M Brick, LLC supplied de-dusted and/or washed limestone to Debtor.  In addition to supplying the limestone, P&M Brick, LLC performed a variety of services, including purchasing such limestone from producers; arranging for delivery by truck of such limestone to the P&M Brick, LLC facility in Coeymans, New York; unloading, stockpiling, and storing such limestone at the P&M Brick, LLC facility in Coeymans, New York; loading such limestone on barges; and coordinating shipment by barge of such limestone to Debtor's facility in Uncasville, Connecticut.

The Defendant further explained and conceded that each of the Transfers was made on account of limestone previously shipped to the Debtor.

The Defendant's responses to the Trustee's Requests for Production of Documents are attached as Exhibit D to the Gutfleish Certification.  In response to document requests nos. 19-21, which requested all documents evidencing all debts owed by the Debtor to the Defendant on the date of each of the preference payments, the Defendant responded that "submitted herewith are documents that evidence debts owed by the Debtor to the Defendant as of [November 5, 2010, December 14, 2010, and December 20, 2010]."

On November 21, 2013, the Trustee's attorneys conducted the deposition of Michelle Hueth, the person designated by Defendant under F.R.Civ.P. 30(b)(6).  Copies of certain pages of the deposition transcript are attached to the Gutfleish Certification as Exhibit E.

When asked about the terms governing the transactions between the Defendant and the Debtor, Ms. Hueth testified that:

> Q:  Are you aware of any contracts executed by P&M Brick and AES Thames?
>
> A:  No.

5

Q:  Do you know how the payment terms between P&M Brick and AES Thames were negotiated?

A:  No.

Q:  Is there a writing, other than invoices, that reflects what those payment terms are?

A:  Not that I'm aware of.

Q:  So to the best of your knowledge, the invoice terms control each of the transactions?

A:  Yes.

[Gutfleish Certification, Exhibit E, page 44, lines 2-4, page 46, line 25 – page 47, line 9]

When asked about the goods and services that the Defendant provided to the Debtor, Ms. Heuth testified that:

Q: What services did P&M Brick render to AES Thames?

A:  In the case of AES Thames, we provided the stevedoring of the products, so the materials from Specialty Minerals, the trucking from Specialty Minerals to our port, the stevedoring service to load the barge, chartering the barge to go to their plant in Connecticut so we handled coordinating all of, all of that.

Q: Let's take it one step at a time. The product you were referring to is the limestone.  Correct?

A:  Correct.

Q:  And that limestone was provided by Specialty Minerals?

A:  Correct.

Q:  And where is Specialty Minerals located?

A:  I believe Adams, Massachusetts.

Q:  So P&M purchased the limestone from Specialty Minerals.  Correct?

6

A:  Correct.

Q:  And P&M then with its own facilities would truck the limestone down to Coeymans.  Correct?

A:  A sister company.

Q:  To P&M Brick?

A:  Right.  It had a separate trucking company.

Q:  So P&M arranged for the trucking of the limestone from Adams, Massachusetts down to Coeymans.  Correct?

A:  Correct.

Q:  Once at Coeymans, P&M Brick then loaded the limestone on the barges. Correct?

A:  Correct.

Q:  And then P&M Brick arranged for the transportation of those barges from Coeymans, NY to AES Thames' facility in Uncasville, Connecticut. Correct?

A:  Correct.

[Gutfleish Certification, Exhibit E, page 44, line 2 – page 45, line 23].

When asked about the Invoices, Ms. Hueth testified that:

Q:  The Court Reporter has handed to you T-6, an exhibit marked T-6, which is an invoice number 2872, issued by P&M Brick to AES Thames. Correct?

A:  Correct.

Q:  While we were discussing the invoices, you may want to keep the Answers to Interrogatories open to response 14, in case you need to refer to that.  To the best of your knowledge, this invoice 2872 reflects the beginning of the business transactions between P&M Brick and AES Thames.  Correct?

A:  Yes.

7

Q:  And do you have an knowledge as to how that business relationship came about?

A:  No.

Q:  What services did P&M Brick provide to AES Thames that are invoiced in invoice number 2872?

A:  The services, the stevedoring services, and it includes the material, the trucking the barging[.]

Q:  And again, by material we are referring to the limestone reference in this invoice.  Correct?

A:  Yes.

Q:  And this is limestone that P&M Brick previously purchased from Specialty Minerals.  Correct?

A:  Yes.

****

Q:  The terms are net 30.  Correct?

A:  Yes.

[Gutfleish Certification, Exhibit E, page 47, line 12 – page 51, line 3].  Ms. Hueth provided

similar testimony regarding all of the Invoices.

On June 16, 2011, the Defendant filed a proof of claim against the Debtor's estate, a

copy of which is attached as Exhibit F to the Gutfleish Certification.  In its proof of claim,

the Defendant represented under penalty of perjury that:

> On or about October 2010, P&M Brick, LLC ("P&M") and AES Thames, LLC ("debtor") entered into a contract for the sale and delivery of 19,800 tons of Limestone material called ECO-CAL ® FGD PLUS. The terms of the agreement were that P&M would acquire the material from Specialty Minerals in Adams MA, truck the material to the Port of Coeymans, and then deliver the material to the debtor by barges owned and operated by P&M. Because of the quantity of material, it was agreed that the material would need to be delivered to the debtor on at least three separate barge trips. The agreed upon cost for the sale and delivery of the material by the P&M to the debtor was $35.00 a ton.

8

Immediately after entering into the contract, the creditor began trucking the material from Adams, MA to the Port of Coeymans. The debtor gave approval to send a first shipment of 7,104.66 tons in November 2010, and that tonnage was delivered to the debtor on two separate barges on November 16 and November 1 8, respectively. The total invoice for that shipment was $248,663.10. This invoice was paid by the debtor in the regular course of business.

A second shipment and part of a third shipment consisting of 9,142.33 tons was obtained from Specialty Minerals and trucked to the Port of Coeymans with the last truck load arriving in December 2010…. During this time, P&M was continuously trying to get approval from the debtor to send the shipment by barge to the debtor, but the debtor was unresponsive. On January 19, 201 1, P&M spoke with Jim Oleksiak from the debtor. Mr. Oleksiak indicated that the debtor was still not ready for the shipment, but that P&M should send him a breakout of the charges for the 9,142.33 tons of material currently sitting on P&M's dock so that P&M could be reimbursed for that material. Mr. Oleksiak did not dispute that payment for this material was owed. On January 19, 201 1, P&M sent Mr. Oleksiak an email with the charges for the 9,142.33 tons. P&M then followed up by sending the debtor an invoice for the charges incurred as of that time for 9,142.33 tons. The invoice reflects a rate of $24.75 per ton, as the shipping charges of approximately $10.00 per ton had not yet been incurred. The total value of the invoice was $226,265.24.

The debtor then filed for bankruptcy. The 9,142.33 tons of limestone continues to be stored on P&M's dock awaiting approval from the debtor for shipment.

P&M makes this proof of claim for the damages incurred of $226,265.24….

## LEGAL ARGUMENT

**A.**  **Rule 15(a)(2)**

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure made applicable to this adversary proceeding by Rule 7015 of the Federal Rules of Bankruptcy Procedure ("Rule 15(a)(2)"), a party may only amend its pleadings without the opposing party's consent with leave of the Court. The Court has discretion to deny the Defendant's request to amend its answer for any of the following reasons, (1) undue delay, (2) bad faith, (3)

dilatory motive, (4) prejudice, or (5) futility. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *Miller Products Co., Inc. v. Veltek Associates, Inc.*, 218 F.R.D. 425, 426 (D. Del. 2003).

## B.    The Defendant's Proposed Conduit Defense Is Futile[1]

### 1.    As A Creditor, The Defendant Cannot Assert That It Was A Conduit

"Courts have made it clear that to be a conduit, one cannot be a creditor and receive a payment to satisfy a debt - this is the 'hallmark' of a preferential transfer." *In re Lenox Healthcare, Inc.*, 343 B.R. 96, 105 (Bankr. D. Del. 2006), (*citing Official Comm. of Unsecured Creditors v. U.S. Relocation Servs. (In re 360networks (USA) Inc.)*, 333 B.R. 194, 202 (Bankr. S.D.N.Y. 2005); *Official Comm. of Unsecured Creditors v. United States Dep't of Labor (In re Dairy Stores, Inc.),* 148 B.R. 6, 9 (Bankr. D.N.J. 1992); *Fonda Group, Inc. v. Marcus Travel (In re Fonda Group, Inc.)*, 108 B.R. 956, 959-60 (Bankr D.N.J. 1989); *Meininger v. TMG Staffing Servs., Inc. (In re Cyprus Rests. of Ga., Inc.)*, 332 B.R. 60, 65 (Bankr. M.D. Fla. 2005)); *In re Toy King Distributors, Inc.*, 256 B.R. 1, 146 (Bankr. M.D. Fla. 2000) ("When the transferee is a creditor, or has a business relationship with the debtor, and it receives a transfer that is applied to its own debt, the transferee cannot be a conduit").

Throughout this adversary proceeding and in its proof of claim, the Defendant has repeatedly explained that it procured, stored and delivered limestone to the Debtor, that it issued each of the Invoices for the debt owed by the Debtor in consideration for the

---

[1] When the Trustee declined to consent to the Defendant's request to file the proposed amended answer, his attorneys requested that the Defendant provide the legal support for the amendment in light of the apparent futility of the alleged defense.  The Defendant did not respond to that request.  The Defendant's motion likewise does not provide any legal support for the alleged defense.

10

procurement, storage and delivery of the limestone, that the Debtor made the Transfers to satisfy the debts memorialized in each of the Invoices, that the Transfers were deposited in the First Niagara Account, and that the Debtor's payment on account of invoice number 5131 was made in connection with the transaction forming the alleged basis for the Defendant's proof of claim.  As the Defendant itself aptly explained, **"[e]ach of the Transfers was received by Defendant and applied to an invoice sent to Debtor for material and services provided by Defendant to Debtor."** [Gutfleish Certification, Exhibit C, Interrogatory No. 9].

Ms. Heuth's deposition further confirms that: (a) the Defendant purchased limestone from Specialty Minerals which it then sold to the Debtor [Gutfleish Certification, Exhibit E, page 44, line 8 – page 45, line 4]; (b) the Defendant unloaded the limestone from trucks upon delivery to its facility and then loaded the limestone onto barges to be shipped to the Debtor [Gutfleish Certification, Exhibit E, page 45, lines 5-23]; (c) the Defendant arranged for the transportation of the limestone by vessel or barges to the Debtor's facility [Gutfleish Certification, Exhibit E, page 45, lines 5-23, page 54, lines 8-13]; and (d) the Defendant invoiced and received payment from the Debtor for the goods and services that the Defendant provided to the Debtor [Gutfleish Certification, Exhibit E, page 57, line 20 - page 66, line 18].

Since the Debtor owed a debt to the Defendant on the date that each of the Transfers was made,[2] and each of the Transfers satisfied a debt owed by the Debtor, the Defendant

---

[2] Section 101(12) of the Bankruptcy Code defines a debt as a "liability on a claim."  Section 101(10)(A) of the Bankruptcy Code defines a creditor as an "entity that has a claim against the debtor that arose at the time or before the order for relief concerning the debtor."  Section 101(5)(A) of the Bankruptcy Code defines a claim as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured."

11

cannot be a conduit.  Thus, it is futile to allow the Defendant to amend its answer to assert

its alleged conduit defense.

### 2.     The Defendant's Allegations Do Not Establish A Plausible Conduit Defense

The Court also evaluates the futility of the Defendant's proposed conduit defense

under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Bayer Cropscience AG v.*

*Dow Agrosciences LLC*, 2012 WL 1253047 at *2 (D. Del. Apr. 12, 2012) (*citing In re*

*Burlington Coat Factory Sec. Litig.* 114 F.3d 1410, 1434 (3d Cir.1997)).

In *In re Summit Metals, Inc.,* 477 B.R. 484, 498-499 (Bankr. D. Del. 2012), and in

other decisions, the Court has previously explained that:

> A Rule 12(b)(6) motion tests the sufficiency of a complaint's factual allegations and requires a court to evaluate whether the complaint has alleged sufficient factual material to show that the claim is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955).  A court must "accept all well-pleaded allegations in the complaint as true, and view them in the light most favorable to the plaintiff." *Carino v. Stefan,* 376 F.3d 156, 159 (3d Cir.2004); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir.2008).  But, a court is not required to accept legal conclusions alleged in the complaint.  *See e.g., Kost v. Kozakiewicz,*, 1 F.3d 176, 183 (3d Cir.1993).
>
> ***
>
> To survive a 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly,* 550 U.S. at 555-56, 127 S.Ct. 1955 (internal citations and quotations omitted).  While a detailed statement of facts is not necessary … the plaintiff must provide "more than labels and conclusions … a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. "[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick,* 605 F.3d 223, 230 (3d Cir.2010).

In *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009), the Third

Circuit Court of Appeals provided the following summary of the analysis required:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

A proposed amended pleading is futile when the claim or defense is not

accompanied by a showing of plausibility sufficient to present a triable issue. *In re*

*Fleming Companies, Inc.,* 347 B.R. 163, 167 (Bankr. D. Del. 2006); *In re Ameriking, Inc.*,

2006 WL 539006 at *2 (Bankr. D. Del. Mar. 2, 2006).

To be a conduit, the Defendant must establish that it "lacked dominion and control

over the transfer because the payment simply passed through its hands and it had no power

to redirect the funds to its own use." *See, In re Gruppo Antico, Inc.,* 359 B.R. 578, 585

(Bankr. D. Del. 2007); *see also, In re CVEO Corp.*, 327 B.R. 210, 216 (Bankr. D. Del.

2005) (*citing Bonded Fin. Servs., Inc. v. European Am. Bank,* 838 F.2d 890, 893 (7th

Cir.1988)); *In re Lenox Healthcare*, 343 B.R. at 103; *In re Lambertson Truex, LLC*, 458

B.R. 155, 159 (Bankr. D. Del. 2011).

The Defendant has admitted in paragraph 15 of its answer and the proposed

amended answer that it was the initial transferee of the Transfers. This alone makes the

proposed alleged conduit defense futile.

The Defendant's allegations in the proposed amended answer also miss the mark.

The fact that the Defendant owed others for the limestone sold and barging services

provided to the Debtor cannot, by itself, establish that the Defendant is a conduit. *See, e.g.,*

13

*In re Cypress Restaurants of Georgia, Inc.*, 332 B.R. 60, 65 (Bankr. M.D. Fla. 2005) (finding that a transferee's duty to pay its own debts out of the revenues that it earns from the preferential transfers in question does not make it a conduit); *In re Toy King Distributors, Inc.*, 256 B.R. 1, 146 (Bankr. M.D. Fla. 2000) (finding that when the transferee receives a transfer that is applies to its own debt, the transferee cannot be a conduit).

In this case, the Defendant incurred a debt to Specialty Minerals, Inc. for the limestone that it purchased and which it subsequently sold and delivered to the Debtor. The invoices issued by Specialty Minerals, Inc. to the Defendant that the Defendant produced in this adversary proceeding are attached as Exhibit G to the Gutfleish Certification. Those invoices reflect that: (a) the Defendant submitted purchase orders for the limestone purchased; (b) the limestone invoiced was sold to the Defendant; (c) the Defendant was responsible for picking up the limestone sold; and (d) the Defendant was responsible to remit payment for the limestone to Specialty Minerals, Inc. within 30 days or 45 days from the dates of invoice. Those invoices do not make any reference to the Debtor and do not make reference to any agreement that the Defendant must pay invoices from funds that the Defendant receives from the Debtor.

According to the Defendant, it utilized the services of Carver Sand & Gravel LLC to truck the limestone purchased from Specialty Minerals Inc. from Adams, Massachusetts to the Defendant's facility. The Invoices issued by Carver Sand & Gravel LLC to the Defendant that the Defendant produced in this adversary proceeding are attached as Exhibit H to the Gutfleish Certification. Those invoices reflect that the services were rendered to the Defendant and that the Defendant was required to remit payment for the

14

services invoiced within 30 days.  Those invoices do not reference any agreement that the Defendant must pay from funds that the Defendant received from the Debtor.

The Defendant's proposed amendment does not allege the existence of a contract or other document evidencing its obligation to transmit the Transfers directly to any third party, to hold the Transfers in trust for any third party, or to use the Transfers for the benefit of third parties, which is necessary establish that it was a conduit.  *See, e.g., In re Lenox Healthcare,* 343 B.R. at 104 (holding that when a transferee is not under any contractual obligation to pass specific funds received from preferential transfers to a third party it cannot be a mere conduit).  Rather, the Defendant merely alleges that it was required to pay the identified entities after it received payment from the Debtor.  To date, the Defendant has not produced any document in response to the Trustee's document requests evidencing a contractual relationship between any parties relating to the Transfers.  Indeed, when asked "are you aware of any contracts executed by P&M Brick and AES Thames." Ms. Hueth responded, "no." [Gutfleish Certification, Exhibit E, Page 44, Lines 2-4].

To the best of the Trustee's knowledge, the Defendant has not produced a single document executed by the Defendant, by the Debtor, by Specialty Minerals, Inc., by Carver Sand & Gravel LLC, or by any other person or entity that requires the Defendant to segregate or hold in escrow the funds paid by the Debtor, or that obligates the Defendant to remit the funds paid by the Debtor to any specific person or entity.  [¶12 Gutfleish Certification].

To the best of the Trustee's knowledge, the Defendant has not produced a single document that evidences an obligation imposed on the Defendant to segregate or hold in escrow the funds paid by the Debtor, or an obligation imposed on the Defendant to remit

15

ME1 17051071v.1

the funds paid by the Debtor to any specific person or entity.  [¶13 Gutfleish Certification].

Likewise, the Defendant's proposed amendment does not allege, and no inference can be drawn from the allegations set forth, that the Defendant did not have dominion and control over the Transfers.  *See, In re Lambertson Truex, LLC*, 458 B.R. at 160 (holding that Defendant has the burden to show that it lacked the requisite control to be a conduit and it failed to allege that payments were put into a special fund over which it had no control and failed to provide any evidence that funds received from Debtor were not deposited into Defendant's account for general use).  Nor could it since the First Niagara Account statements make clear that the Transfers were deposited into a checking account into which funds from sources other than the Debtor were deposited, and from which disbursements were made for purposes other than to the entities identified in the Defendant's proposed amended answer.  *See, e.g., In re U.S. Interactive, Inc.,* 321 B.R. 388, 396 (Bankr. D. Del 2005) (*citing Bonded Fin. Servs.,* 838 F.2d at 893)) (holding that the defendant was not a conduit since the funds received flowed into general unrestricted bank accounts to be used as the defendant saw fit); *Nelmark v. Helms,* 2003 WL 1089363, at *3 (N.D. Ill. Mar. 11, 2003) (finding that commingling funds with general funds of the defendants was a factor establishing defendants' dominion and control).

While the Defendant alleges that it "remitted payments" to the entities identified, it does not allege that it forwarded the Transfers to those entities, it does not identify the source of those payments, and it does not allege that it segregated the Transfers or held the Transfers in trust for the benefit of those entities.

Since the Defendant's allegations do not show a defense that is plausible, its proposed amendment is futile.

16

**C.     The Defendant Has Failed To Explain
        Its Undue Delay In Seeking To Amend**

In determining whether an amended answer would result in undue delay the Court should focus on "the movant's reasons for not amending sooner." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001); *Cradle IP, LLC v. Texas Instruments, Inc.*, 2013 WL 2285043 at *2 (D. Del. May 23, 2013).

In support of its motion, the Defendant merely states that the "factual basis for the proposed affirmative defense was discovered within less than one week before the within motion was filed." The Trustee cannot reconcile that statement with the facts.

The Defendant filed its proof of claim, which explains the use of others in the supply chain, on June 16, 2011, well before the commencement of this adversary proceeding. The Defendant's responses to the Trustee's interrogatories also detail the transactions between the Debtor and the Defendant, as well as the transactions between the Defendant and the entities identified in its proposed amended answer. And, the documents that the Defendant produced include invoices for the limestone the Defendant purchased from Specialty Minerals, Inc. and the trucking charges invoiced by Carver Sand & Gravel LLC.

Thus, it appears that at all times the Defendant was aware of the alleged documents and "factual basis" upon which it relies for its newly proposed conduit defense.

The Defendant's failure to adequately explain its delay is cause to deny the relief requested. *See, In re Vision Metals, Inc.*, 311 B.R. 692, 702 (Bankr. D. Del. 2004) (denying motion to amend and finding that moving party failed to offer an explanation for its delay and failed to allege any newly discovered facts in its amended pleading);

17

*Zubulake v. UBS Warburg LLC*, 231 F.R.D. 159, 162 (S.D.N.Y. 2005) (holding that a motion to amend may be denied where the moving party knows or should have known of the facts upon which the proposed amendment is based, but failed to include them in the original pleading); *E.E.O.C. v. Boeing Co.*, 843 F.2d 1213, 1222 (9th Cir. 1988) (same); *Carpenter v. Churchville Greene Homeowner's Ass'n*, 2011 WL 4711961 (W.D.N.Y. Sept. 29, 2011) *report and recommendation adopted sub nom., Carpenter v. Churchville Greene Homeowner's Ass'n, Inc.*, 2011 WL 6012539 (W.D.N.Y. Dec. 1, 2011) (same).

The Trustee has completed his fact discovery and the current deadline for all parties to do so is January 31, 2014.

Since the Defendant had knowledge of the facts to assert its newly proposed conduit defense and has failed to explain why it waited until the Trustee completed his fact discovery to assert its new defense, its motion should be denied.  *Id.*

**D.    Allowing Leave to Add the Conduit Defense is Unduly Prejudicial**

To determine whether the Defendant's request is unduly prejudicial the Court focuses on the hardship to the non-moving party if the amendment were permitted.  Factors considered include additional discovery, cost, and preparation to defend against new facts or new theories.  *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d at 273; *In re Cradle*, 2013 WL 2285043 at *2; *In re Mortgage Lenders Network, USA, Inc.*, 395 B.R. 871, 878 (Bankr. D. Del. 2008); *In re Enron Corp.*, 367 B.R. 373, 380 (Bankr. S.D.N.Y. 2007).

The Trustee has expended significant effort, time, and cost during this adversary proceeding based on the Defendant's admissions and defenses and the Trustee has prepared his case based upon the legal admissions that the Defendant was the initial transferee of the Transfers (which the Defendant still admits in the proposed amended answer).  If the

Defendant were permitted to amend its answer at this time, the Trustee necessarily would be required to take additional discovery from the Defendant and the non-parties identified in its proposed amended answer.   Thus, the Defendant's request for relief is unduly prejudicial to the Trustee.  *See, e.g., Zubulake*, 231 F.R.D. at 162 (denying leave to amend as unduly prejudicial because plaintiff would be required to take substantial discovery to rebut the newly proposed defense); *see also, In re Suburban Motor Freight, Inc.*, 114 B.R. 943, 951 (Bankr. S.D. Ohio 1990) (finding that defendant's motion to add additional affirmative defenses would result in a financial burden to the estate and is therefore unduly prejudicial to the trustee).

## **CONCLUSION**

For all of the following reasons, the Trustee respectfully requests that the Court deny the Defendant's motion.

Dated: January 21, 2014             **McCARTER & ENGLISH, LLP**
         Wilmington, DE

                                    */s/ Katherine L. Mayer*
                                    Katharine L. Mayer (DE #3758)
                                    Renaissance Centre
                                    405 N. King Street, 8th Floor
                                    Wilmington, DE  19801
                                    Telephone:  (302) 984-6300
                                    Facsimile:  (302) 984-6399
                                    kmayer@mccarter.com

                                            -and-

19

**FORMAN HOLT ELIADES &**
**YOUNGMAN LLC**
Harry M. Gutfleish, Esq.
Matteo Percontino, Esq.
80 Route 4 East, Suite 290
Paramus, NJ 07652
Telephone: (201) 845-1000
Fax: (201) 845-9112
hgutfleish@formanlaw.com
mpercontino@formanlaw.com

*Counsel to Charles M. Forman,*
*the Chapter 7 Trustee*

20