UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>        AES THAMES, L.L.C.,<br><br>                        Debtor. | Chapter 7<br><br>Case No. 11-10334 (KJC) |
| CHARLES M. FORMAN,<br>Chapter 7 Trustee,<br><br>                        Plaintiff,<br><br>                v.<br><br>P&M BRICK LLC,<br><br>                        Defendant. | Adversary Proceeding No.:<br>13-50406 (KJC) |

**REPLY MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT P&M BRICK LLC PURSUANT TO FED.R.CIV. PROC. 15(a)(2) AND FED.R. BANKR. PROC. 7015 FOR LEAVE TO AMEND ANSWER TO COMPLAINT**

David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 Orange Street, 7th Floor
Wilmington, DE 19801
Telephone:  (302) 573-2525
Facsimile: (302) 573-2524
dfinger@delawgroup.com

NOLAN & HELLER, LLP
Justin A. Heller, Esq.
*Attorneys for P&M Brick, LLC*
39 North Pearl Street, 3rd Floor
Albany, New York 12207
Telephone: (518) 449-3300
Facsimile: (518) 432-3123
jheller@nolanandheller.com
*Attorneys for P&M Brick, LLC*

Dated: January 27, 2014

# **TABLE OF CONENTS**

Table of Authorities..................................................................................................ii

Statement and Nature and Stage of Proceedings.........................................................1

Summary of Argument.............................................................................................2

Statement of Facts ..................................................................................................3

Legal Argument......................................................................................................5

P&M has Alleged Facts Sufficient to Support Its Proposed Affirmative Defense

  A.  Rule 15(a)(2)………………………………………………………………..5

  B.  The Amendment is Not Futile…………………………………………………...7

  C.  There Was No Undue Delay in Seeking Leave to Amend the Answer…………………………………………………….………………..9

  D.  There is No Undue Prejudice to the Trustee………………………………………10

Conclusion...........................................................................................................12

i

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Gould, Inc.,* 739 F.2d 858 (3d Cir. 1984) ....................................................................... 9

*Andreini & Co. v. Pony Express Delivery Svcs., Inc.,* 440 F.3d 1296 (11th Cir. 2006) ..............7, 8

*Bechtel v. Robinson,* 886 F.2d 644 (3d Cir. 1989) ........................................................................11

*In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410 (3d Cir. 1997)…………………………………………………………………………………………….6

*Burlington Motor Carriers Inc. v. APL Ltd. (In re Burlington Motor Carriers Inc.),* No. CIV A. 99-157 MMS, 1999 U.S. Dist. LEXIS 20819, 1999 WL 1427683 (D. Del. Dec. 30, 1999).........10

*Coca-Cola Bottling Co. of Elizabethtown, Inc. v. Coca-Cola Co.,* 668 F.Supp. 906, 922 (D. Del. 1987)…………………………………………………………………………………………..10

*Foman v. Davis,* 371 U.S. 178 (1962) .........................................................................................6

*In re Lenox Healthcare, Inc.,* 343 B.R. 96 (Bankr. D. Del. 2006) ...................................................7

*Nordberg v. Societe General (In re Chase & Sanborn Corp.),* 848 F.2d 1196 (11th Cir. 1990) .....8

*PCT v. Authentic Specialty Foods, Inc.* 347 B.R. 163 (Bankr. D. Del. 2006)…………………………………………..……………………………………………………10

*Plains Marketing, L.P. v. Bank of America, N.A.,* 443 B.R. 472 (Bankr. D. Del. 2011)…..………5

*In re Semcrude, L.P.,* 443 B.R. 472 (Bankr. D. Del. 2011) ....................................................9, 11

*Stewart v. Jersey City Mun. Util. Auth.,* 2005 U.S. Dist. LEXIS 37182, *2, 3 (D.N.J. 2005)....6, 9

## Other Authorities

*Fed.R.Bankr.Proc. 7015* ...........................................................................................................2

*Fed.R.Civ.Proc. 15(a)*...............................................................................................................5

*Fed.R.Civ.Proc. 12(b)(6)* ..........................................................................................................6

*11 U.S.C. §547(b)* ....................................................................................................................1

*11 U.S.C. §550(a)* ...................................................................................................*1,8*

## STATEMENT OF NATURE AND STAGE OF PROCEEDINGS

AES Thames, .L.L.C. ("Debtor") filed for relief pursuant to Chapter 11 of the United States Bankruptcy Code (the "Code") on February 1, 2011.  The Debtor's case was converted to a proceeding under Chapter 7 by order of this Court entered on January 23, 2012.  Charles M. Forman, Esq. ("Trustee") was appointed as Chapter 7 Trustee of the Debtor's case by the Office of the United States Trustee on January 24, 2012, and continues to serve in that capacity.

The Trustee filed a complaint against P&M Brick, LLC ("P&M") on January 18, 2013, alleging that certain payments received by P&M from the debtor constituted preferential transfers pursuant to §547(b) of the Code, and that such transfers were recoverable from P&M pursuant to §550(a) of the Code.  Issue was joined by P&M filing its answer with the Court on April 10, 2013.

Pursuant to this Court's scheduling order entered on June 20, 2013 (the "Scheduling Order"), the Court directed that: i) fact discovery must be completed by December 31, 2013; ii) disclosure of expert reports must be completed by January 30, 2014; and iii) expert discovery must be completed by March 30, 2014.  The Trustee and P&M stipulated to an extension of the deadline to complete fact discovery to January 31, 2014.

The Scheduling Order further provided that the parties were to stipulate to the appointment of a mediator by December 30, 2013.  On December 10, 2013, the parties filed a Stipulation Regarding Appointment of Mediator, indicating the selection of Eric J. Haber, Esq. A mediation conference is scheduled for February 11, 2014.

On January 8, 2014, P&M filed its motion for leave to file and serve an amended complaint (the "Motion").  On January 21, 2014, the Trustee filed his opposition to the Motion.

As set forth in the Motion and herein, P&M respectfully requests that the Court enter an

order granting the Motion.

## SUMMARY OF ARGUMENT

P&M respectfully submits that entry of an order granting the Motion is warranted. Pursuant to Fed.R. of Civ. Proc. 15(a), applicable to this proceeding pursuant to Fed.R.Bankr. Proc. 7015, "[t]he court should freely give leave when justice so requires." Fed.R. of Civ. Proc. 15(a)(2).  By its Motion, P&M seeks leave to file and serve an amended answer to assert as an additional affirmative defense to the Trustee's preference claim that it was a mere conduit of the payments received from the Debtor at issue in the Complaint and, therefore, is not an initial transferee of the transfers.

The courts of the Third Circuit have held that leave to amend a pleading should be granted absent a showing of: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party by virtue of allowance of the amendment; or (5) futility of the amendment.   In particular, with respect to the futility of the amendment, the Court is not tasked with ultimately determining the underlying claim or defense, but only with determining whether the proposed amendment fails to state a claim upon which relief can be granted.  Stated otherwise, leave to amend a pleading should be granted absent a finding that the amendment would not withstand a motion to dismiss.

It is respectfully submitted that P&M's proposed amended pleading withstands that level of scrutiny and does, in fact, state an affirmative defense upon which relief can be granted.  As noted in the affidavit of Michelle Hueth, P&M's controller, P&M was obligated to pay from the payments it received from the Debtor, Specialty Minerals, Inc., Carver Sand & Gravel LLC, the Port of Coeymans, Eastern Barge and White Near Coastal for supplying and transporting the

limestone to the Debtor. P&M did not make any payments to those parties until after it received the payments at issue in the Complaint. Accordingly, P&M acted essentially as a disbursing agent for the benefit of the other parties in the transaction with the Debtor. As such, P&M has stated facts to support its proposed affirmative defense that it acted as a mere conduit with respect to the payments received from the Debtor that it disbursed to the parties noted herein for materials provided to the Debtor. Therefore, entry of an order granting the Motion is warranted.

### STATEMENT OF FACTS

In or about the fall of 2009, the Debtor solicited bids for the provision of limestone for use in its coal-fired power plant located in Montville, Connecticut. P&M, in conjunction with Specialty Minerals, Inc. from Adams, Massachusetts, made a joint proposal to the Debtor to provide such materials. On or about November 23, 2009, the Debtor ordered limestone through P&M essentially as a "test run" to evaluate whether to use P&M to coordinate the supplying of limestone. On November 23, 2009, Defendant coordinated the shipment of 2,797.21 tons of limestone to Debtor at a total price of $107,692.59. Such shipment was made for purposes of allowing Debtor to test the material produced by Specialty Minerals, Inc. and was shipped by Defendant to Debtor's Uncasville, Connecticut plant. In connection with this first shipment, Defendant sent Invoice No. 2872, dated November 23, 2009, to Debtor. Defendant received Debtor's payment therefor in the amount of $107,692.59 on December 31, 2009.

In or around April, 2010, Debtor advised that it intended to purchase its limestone requirements for its Uncasville, Connecticut plant from Defendant for a period of one year, likely beginning in late June, 2010. On or about June 11, 2010, Debtor advised that its Uncasville, Connecticut limestone requirements contract for the period July 1, 2010 through June 30, 2011 had been awarded to the joint proposal submitted by Defendant and Specialty Minerals, Inc.

3

Thereafter, Defendant began coordinating the delivery by truck of limestone from Specialty Minerals, Inc.'s facility in Adams, Massachusetts, to Defendant's facility in Coeymans, New York, in preparation for commencing regular shipments to Debtor's Uncasville, Connecticut plant.

On July 1, 2010, 3,227.02 tons of limestone was shipped to the Debtor at a total price of $104,878.15.   On July 6, 2010, an additional 3,100.74 tons of limestone was shipped to the Debtor at a total price of $100,774.05.   In connection with such shipments, Defendant sent Invoice No. 4163, dated July 9, 2010, to Debtor.   Defendant received Debtor's payment therefor in the amount of $205,652.20 on August 20, 2010.

On September 15, 2010, an additional 3,060.96 tons of limestone was shipped to Debtor at the total price of $99,481.20. In connection with such shipment, Defendant sent Invoice No. 4712, dated September 30, 2010 to Debtor.   On September 17, 2010, an additional 3,329.81 tons of limestone was shipped to the Debtor at the total price of $108,218.83.   In connection with such shipment, Defendant sent Invoice No. 4722, dated September 30, 2010 to Debtor. Defendant received Debtor's payment therefor in the amount of $207,700.03 on November 5, 2010.

On October 26, 2010, an additional 6,317.70 tons of limestone was shipped to the Debtor at the total price of $221,119.50.   In connection with such shipment, Defendant sent Invoice No. 4990, dated October 30, 2010 to Debtor.   Defendant received Debtor's payment therefor in the amount of $221,119.50 on December 14, 2010.

On November 16, 2010, an additional 3,564.55 tons of limestone was shipped to the Debtor at the total price of $124,759.25.   On November 18, 2010, an additional 3,540.11 tons of limestone was shipped to the Debtor at a total price of $123,903.85.   In connection with such

4

shipments, Defendant sent Invoice No. 5131, dated November 23, 2010, to Debtor. Defendant received Debtor's payment therefor in the total amount of $248,663.10 on December 20, 2010.

Upon receipt of each of the foregoing payments, P&M disbursed the funds received to pay the amounts due the other participants in the sale and shipment of limestone to the Debtor. In doing so, it acted as a conduit for payments to those parties and essentially as a disbursing agent of the funds received from the Debtor. Based upon the foregoing, P&M has stated facts sufficient to support its proposed affirmative defense that it acted as a mere conduit with respect to payments owed to those other parties for materials supplied for the Debtor's benefit and use.

## ARGUMENT

### P&M HAS ALLEGED FACTS SUFFICIENT TO SUPPORT ITS PROPOSED AFFIRMATIVE DEFENSE

#### A.  Rule 15(a)(2)

Fed.R.Civ.Proc. 15(a)(2), applicable to the within proceeding pursuant to Fed.R.Bankr. Proc. 7015, provides "Other Amendments. … [a] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." *Fed.R.Civ.Proc. 15(a)(2).* Indeed, "[t]he United States Supreme Court and the Court of Appeals of the Third Circuit have each held that leave to amend should be freely given absent a showing by the non-moving party of one of the following grounds for denial: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party by virtue of allowance of the amendment; or (5) futility of the amendment." *Plains Marketing, L.P. v. Bank of America, N.A., 443* B.R. 472, 476 (Bankr. D. Del. 2011*), citing, Foman v. Davis, 371* U.S. 178 (1962*).* Futility "means that the complaint, as amended, would fail to state a claim upon which relief could be granted. In assessing 'futility', the district court applies the same standard of legal

5

sufficiency as applies under Rule 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.,* 114 F3d 1410, 1434 (3d Cir. 1997) (citations omitted).

"In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief can be granted, all allegations in the [pleading] must be taken as true and must be viewed in the light most favorable to the [non-moving party]…. If, after viewing the allegations in the complaint in the light most favorable to the [non-moving party], it appears beyond doubt that no relief could be granted 'under any set of facts which could prove consistent with the allegations,' a court shall dismiss a complaint for failure to state a claim." *Stewart v. Jersey City Mun. Util. Auth.,* 2005 U.S. Dist. LEXIS 37182, *2, 3 (D.N.J. 2005). Applying this standard to the Motion, it is clear that P&M state sufficient facts to overcome the standard applied to motions pursuant to Rule 12(b)(6).

It is respectfully submitted that P&M's responses to the Trustee's discovery demands, coupled with Ms. Heuth's affidavit in support of the Motion clarifying the nature of the transaction and the relationship between the parties supplying and transporting the limestone to the Debtor clearly allege facts sufficient to support an affirmative defense that P&M was a mere conduit for payments to those other parties. Applying the standard applicable to a motion to dismiss pursuant to Rule 12(b)(6), P&M has stated facts sufficient to withstand dismissal. Accordingly, the Motion should be granted and P&M should be permitted to file and serve its amended answer to assert as an affirmative defense that it was a mere conduit for payments to other parties in the supply chain for the limestone supplied to the Debtor and, therefore, is not liable to the Trustee or the Debtor's estate for monies received from the Debtor during the pre-petition preference period.

## B. The Amendment is Not Futile

Contrary to the Trustee's contention, P&M had an obligation to pay Specialty Minerals, Inc., Carver Sand & Gravel LLC, the Port of Coeymans Eastern Barge and White Near Coastal for the materials and services provided by each of them on the Debtor's behalf for supplying and delivering the limestone to the Debtor. In this respect, this case is distinguishable from the facts of cases cited by the Trustee such as *In re Lenox Healthcare, Inc.,* 343 B.R. 96 (Bankr. D. Del. 2006). In that case, the Delaware Bankruptcy Court found that the recipient of a payment from the debtor during the preference period could not avail itself of the mere conduit defense because the recipient had paid the suppliers <u>before</u> receipt of the payments from the debtor for the same goods, and the debtor's payment simply reimbursed the recipient for money that it had already advanced on the debtor's behalf. In this case, P&M did not pay any of the other parties in the supply chain until <u>after</u> it received the payments in question from the Debtor. Thus, P&M did not fulfill any obligation to Specialty Minerals, Inc., Carver Sand & Gravel LLC, the Port of Coeymans Eastern Barge or White Near Coastal until receipt of the payments in question from the Debtor.

In this respect, the facts of this case are more akin to those found in *Andreini & Co. v. Pony Express Delivery Svcs., Inc.,* 440 F.3d 1296 (11th Cir. 2006). In that case, the debtor's insurance agent received funds from the debtor for payment of insurance premiums. The agent then paid the insurance carrier despite the fact that the debtor's funds had not yet cleared the agent's account into which the debtor deposited its funds. Subsequently, the debtor's checks to the agent were returned for insufficient funds. The debtor then wired funds to the agent to cover the payments that the agent had already made on the debtor's behalf to the carrier.

In its reversal of the District Court's affirmance of the Bankruptcy Court's decision finding the agent liable to the debtor for a preferential transfer, the Eleventh Circuit applied the

7

same "control" test as has been adopted in the Third Circuit, but found that such test 'is a flexible, pragmatic one; … courts must look beyond the particular transfers in question to the entire circumstance of the transactions'."  *Id.,* at 1302*, quoting, Nordberg v. Societe General (In re Chase & Sanborn Corp.),* 848 F.2d 1196 (11th Cir. 1990).  The Eleventh Circuit recognized that

> [u]nder this test, a recipient of an avoidable transfer is an initial transferee only if they exercise legal control over the assets received, such that they have the right to use the assets for their own purposes, and not if they merely served as a conduit for assets that were under the actual control of the debtor-transferor or the real initial transferee.  *Id., at 1300.*

Application of the "flexible, pragmatic" approach the Court enunciated required it to "step back and evaluate the transaction in its entirety to make sure that their conclusions are logical and equitable.  This approach is consistent with the equitable concepts underlying bankruptcy law."  *Id.,* at 1302.  Applying this approach to the debtor's claim, the Eleventh Circuit found that the agent did not exercise legal control over the wire transfer it received after it had made payment to the insurer and, therefore, was not an "initial transferee" for the purposes of 11 U.S.C. §550.

P&M's obligations to the supplier and transporters of the limestone significantly limited P&M's exercise of control over the funds at issue, such that it cannot be held to be an initial transferee.  Unlike the cases cited by the Trustee, P&M was not being reimbursed by the Debtor on account of funds it advanced on the Debtor's behalf to Specialty Minerals, Inc., Carver Sand & Gravel LLC, the Port of Coeymans Eastern Barge or White Near Coastal.  Instead, P&M paid those parties only after receipt of the Debtor's payments.  As stated in Ms. Hueth's declaration, the participants intended that the proceeds would be allocated between them, and if P&M used those funds for some purpose other than paying the relevant parties, it would have done so at its

8

peril and in breach of its contractual obligations to those parties based on their invoices to P&M.

Comparison of the situation here those presented in the cases cited by the Trustee, wherein the

recipient was reimbursed for funds that it had already advanced, and so would clearly have been

entitled to use the funds for its own use, compels a conclusion that P&M asserts facts sufficient

to support its "mere conduit" defense, and that those facts are sufficient to withstand dismissal of

the defense under Rule 12(b)(6).

### C.   There Was No Undue Delay In Seeking Leave To Amend The Answer

The Third Circuit has held that "[t]he passage of time, without more, does not require that

a motion to amend a complaint be denied; however, at some point, the delay will become

'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an

unfair burden on the opposing party." *Adams v. Gould, Inc.,* 739 F.2d 858, 868 (3d Cir. 1984).

In this case, P&M filed and served its answer to the Complaint on April 10, 2013.  Document

discovery and depositions proceeded and the parties stipulated to the extension of the deadline

for the completion of fact discovery to January 31, 2014.  The full basis for the proposed

amendment came about following review of Ms. Hueth's testimony at her deposition conducted

on November 21, 2013.  The Motion was filed on January 8, 2014, while fact discovery was still

open.

In *In re Semcrude, L.P.,* 443 B.R. 472 (Bankr. D. Del. 2011), the Delaware Bankruptcy

Court noted several instances in which it held that delays of months or years between the filing

date of the complaint to the filing of a motion for leave to amend a pleading did not constitute an

undue delay.  The movant in *In re Semcrude* sought leave to amend its pleading approximately

one year from the filing date of the complaint.  The court found that the movant "filed the

Motion well within the time frames in which the courts in this District have previously granted

leave to amend. *Burlington Motor Carriers Inc. v. APL Ltd. (In re Burlington Motor Carriers Inc.),* No. CIV A. 99-157 MMS, 1999 U.S. Dist. LEXIS 20819, 1999 WL 1427683, at *9 (D. Del. Dec. 30, 1999) (holding that a delay of ten months after the complaint was filed did not constitute undue delay); *Coca-Cola Bottling Co. of Elizabethtown, Inc. v. Coca-Cola Co.,* 668 F.Supp. 906, 922 (D. Del. 1987) (holding that a delay of six and one-half years after the complaint was filed did not constitute undue delay); *PCT v. Authentic Specialty Foods, Inc.,* 347 B.R. 163 (Bankr. D. Del. 2006) (holding that a delay of eight months after the filing of the complaint did not constitute undue delay)."

In this case, P&M filed its motion for leave to amend its answer on January 8, 2014, while the Complaint was filed on January 18, 2013; a period of approximately one year. Based on the survey of cases considering the time between the filing date of a complaint and a motion to amend a pleading related to that complaint, the one year time frame in this case is well within the parameters set by this Court to find that there is no undue delay.

Based upon the foregoing, it is respectfully submitted that there was no undue delay by P&M in filing the Motion.

## D.  There Is No Undue Prejudice To The Trustee

The Third Circuit has held that "[t]o establish prejudice, 'the non-moving party must do more than merely claim prejudice; it must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been timely'." *In re Semcrude, L.P.,* 443 B.R. at 481*, quoting, Bechtel v. Robinson,* 886 F.2d 644, 652 (3d Cir. 1989)(internal citations omitted).  Contrary to the Trustee's contention, the costs, if any, to the estate would be nominal.  To the extent that the Trustee deems it necessary to conduct further discovery of P&M regarding the proposed additional affirmative defense, P&M

will willingly produce a witness at the Trustee's offices to be examined.  It should also be noted that the Trustee's claim concerns only three transactions made during the preference period. This is not a case involving hundreds, or event tens, of transactions that must be again reviewed in light of the proposed defense.  Further, P&M produced the invoices received from Specialty Materials, Inc., Carver Sand & Gravel LLC, the Port of Coeymans Eastern Barge and White Near Coastal to the Trustee during the course of discovery.  Thus, the documents showing the relevant dates of the underlying transactions with the supplier and transporters have been in the Trustee's possession for several months.  In fact, the Trustee attached those invoices to Mr. Gutfleish's Certification accompanying the Trustee's opposition to the Motion.  It is respectfully submitted that further document discovery may be limited to evidence of the payments to the supplier and transporters after P&M received payment from the Debtor.  Accordingly, any additional expense to the estate to evaluate the mere conduit defense is likely to be nominal in comparison to the amount at issue in the Complaint, which is in excess of $675,000.00.

## <u>CONCLUSION</u>

Based upon the foregoing and all of the pleadings submitted with respect to the Motion, it is respectfully submitted that P&M has demonstrated that the Motion to Amend should be granted.

Dated:  January 27, 2014

                                               Respectfully submitted,

                                               /s/ David L. Finger_____
David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 N. Orange Street, 7th Floor
Wilmington, DE 19801
Telephone:  (302) 573-2525
Facsimile: (302) 573-2524
dfinger@delawgroup.com


NOLAN & HELLER, LLP
Justin A. Heller, Esq.
*Attorneys for P&M Brick, LLC*
39 North Pearl Street, 3rd Floor
Albany, New York 12207
Telephone: (518) 449-3300
Facsimile: (518) 432-3123
jheller@nolanandheller.com


*Attorneys for P&M Brick, LLC*

# Exhibit A

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>      AES THAMES, L.L.C.,<br><br>                  Debtor. | Chapter 7<br><br>Case No. 11-10334 (KJC) |
| CHARLES M. FORMAN,<br>Chapter 7 Trustee,<br><br>                  Plaintiff,<br><br>        v.<br><br>P&M BRICK LLC,<br><br>                  Defendant. | **DECLARATION IN RESPONSE BY P&M BRICK LLC TO TRUSTEE'S OPPOSITION TO DEFENDANT'S MOTION PURSUANT TO FED.R.CIV. PROC. 15(a)(2) and FED.R. BANKR. PROC. 7015 FOR LEAVE TO AMEND ANSWER TO COMPLAINT**<br><br>Adversary Proceeding No.:<br>13-50406 (KJC) |

**MICHELLE HUETH,** hereby declares as follows:

1.     I am the Controller for P&M Brick LLC ("P&M") the defendant in the above-captioned adversary proceeding. I make this affidavit in response to the Trustee's Opposition (the "Opposition") to P&M's Motion to Amend its Answer (the "Motion") and in further support of the Motion.

2.     As an initial matter, it should be noted that I am not an attorney. As such, my responses to questions by the Trustee's counsel during my deposition conducted in this matter were based on a lay person's understanding and interpretation of Trustee's counsel's questions.

3.     The fact is that, notwithstanding the Trustee's portrayal of my testimony, the sales

of limestone in question were made to the Debtor jointly with Specialty Minerals, Inc., Carver Sand & Gravel LLC, the Port of Coeymans, Eastern Barge, White Near Coastal, and P&M. P&M coordinated the sales but the parties' understanding was that P&M would disburse payments from the Debtor to each of the parties for the discrete services they performed.

4.     I note that in response to Interrogatory 14 proffered by the Trustee, P&M advised that "In or about the fall of 2009, [P&M] and a limestone producer (Specialty Minerals, Inc.) submitted a joint proposal to Debtor offering to supply Debtor's limestone requirements for its Uncasville, Connecticut plant." Thus, it was clear to the Debtor from the initial proposal that P&M would be working in conjunction with Specialty Minerals to supply limestone to the Debtor. See, Exhibit "C" to Trustee's Opposition, Response to Paragraph 14.

5.     In further response to Interrogatory 14, P&M advised that it "coordinat[ed] the delivery by truck of limestone from Specialty Minerals, Inc.'s facility in Adams, Massachusetts to [P&M's] facility in Coeymans, New York in preparation for commencing regular shipments to Debtor's Uncasville, Connecticut plant."

6.     Carver Sand & Gravel LLC provided the trucking for the limestone from Specialty Materials, Inc.'s facility to the Port of Coeymans. In turn, P&M coordinated the barging of the product by Port of Coeymans Marine Terminal with barging companies Eastern Barge and White Near Coastal to the Debtor's facility in Connecticut, where it was then off-loaded by the Debtor. Thus, it is clear that there were multiple parties involved procuring, supplying and transporting the limestone to the Debtor.

7.     It should be noted that all of the invoices from Carver Sand & Gravel LLC for costs for trucking the limestone to the Port of Coeymans specifically refer to "AES Thames/Spec. Minerals". Thus, it is respectfully submitted that these invoices demonstrate that

there were suppliers and contractors to whom money was owed from the payments made through P&M for those parties' benefit.

8.     It should also be noted that P&M did not pay Specialty Minerals, Carver Sand & Gravel LLC, the Port of Coeymans Eastern Barge or White Near Coastal with respect to the alleged preferential payments until after P&M received payment from the Debtor.  Thus, P&M essentially earmarked payments from the Debtor for payment to the suppliers and transporters of the limestone.  This procedure was consistent with the parties' understanding that they would be paid from the payments received by P&M from the Debtor.

9.     The Trustee did not inquire about P&M's subsequent payments to the supplier and transporters of the limestone.  Had he asked questions about those payments I would have responded as noted above; namely, that P&M did not pay the supplier or transporters prior to receiving the payment from the Debtor that are in dispute in this case, and that this arrangement was consistent with the parties' understanding.

10.     It is respectfully submitted that P&M's business practice with respect to payments to Specialty Minerals, Carver Sand & Gravel LLC, the Port of Coeymans, Eastern Barge and White Near Coastal supports P&M's proposed affirmative defense that it acted as a mere conduit with respect to the payments in dispute in this matter.  Accordingly, allowing P&M to assert this defense is warranted.

11.     In the event that the requested relief is granted and the Trustee determines that he needs further discovery or testimony on this issue, P&M will make such witnesses available to the Trustee.  I note that I traveled to the Trustee's offices in New Jersey for my prior deposition and will similarly accommodate the Trustee again if he deems such an examination appropriate.

I declare that the foregoing is true and correct.

Sworn to before me this

24th day of January 2014

JOHN J. WILSON
Notary Public, State of New York
No. 01WI5087849
Qualified in Schenectady County
Commission Expires November 10, 20 17

MICHELLE HUETH

FINGER & SLANINA, LLC
David L. Finger, Esq.
*Attorneys for P&M Brick, LLC*
One Commerce Center
1201 Orange Street, 7th Floor
Wilmington, DE 19801
Telephone: (302) 573-2525
Facsimile: (302) 573-2524
dfinger@delawgroup.com

NOLAN & HELLER, LLP
Justin A. Heller, Esq.
*Attorneys for P&M Brick, LLC*
39 North Pearl Street, 3rd Floor
Albany, New York 12207
Telephone: (518) 449-3300
Facsimile: (518) 432-3123
jheller@nolanandheller.com

102083

<u>**CERTIFICATE OF SERVICE**</u>

I, David L. Finger, hereby certify that on this 27th day of January, 2014, I caused the

foregoing document to be served via first-class mail, postage prepaid, on the below-listed

counsel of record:

Katharine L. Mayer, Esq.
Matthew J. Rifino, Esq.
McCarter & English, LLP
P.O. Box 111
Wilmington, DE  19899

/s/ David L. Finger_____
David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 N. Orange Street, 7th Floor
Wilmington, DE 19801
Telephone:  (302) 573-2525
Facsimile: (302) 573-2524
dfinger@delawgroup.com