**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | Case No. 11-10334 (KJC) |
| AES Thames L.L.C., | : | |
| Debtor. | : | |
| | : | |
| Charles M. Forman,  Chapter 7 Trustee, | : | |
| | : | |
| Plaintiff, | : | Adv. Pro. No. 13-50406 (KJC) |
| | : | |
| vs. | : | |
| | : | |
| P&M Brick LLC, | : | |
| | : | |
| Defendant. | : | Related Docket No. 59 |

---

**TRUSTEE'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

---

Dated:  September 12, 2014

**McCARTER & ENGLISH, LLP**
Katharine L. Mayer (DE #3758)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE  19801
Telephone:  (302) 984-6300
Facsimile:  (302) 984-6399
kmayer@mccarter.com

-and-

**FORMAN HOLT ELIADES & YOUNGMAN LLC**
Harry M. Gutfleish, Esq.
Matteo Percontino, Esq.
80 Route 4 East, Suite 290
Paramus, NJ 07652
Telephone: (201) 845-1000
Fax: (201) 845-9112
hgutfleish@formanlaw.com
mpercontino@formanlaw.com

*Counsel to Charles M. Forman, the Chapter 7* Trustee

ME1 18890049v.1

## TABLE OF CONTENTS

                                                                                    **Page No.**

TABLE OF AUTHORITIES……………………………………………………...........ii

STATEMENT OF NATURE AND STAGE OF PROCEEDINGS…………………….....1

SUMMARY OF ARGUMENT……………………………………………………….....3

STATEMENT OF FACTS…………………………………………………………….....6

      A.  Transfers……………………………………………………………….........6
      B.  The Defendant's Account………………………………………………….....7
      C.  The Defendant's Proofs of Claim………………………………………….....8
      D.  The Defendant's Initial Discovery Responses………………………………9
      E.  The Defendant's Testimony…………………………………………………10
      F.  Defendant's Second Discovery Responses……………………………….....13
      G.  The Defendant's Schedule of Transactions………………………………… 16
      H.  The Specialty, Mohawk, and Eastern Affidavits………………………….... 16
      I.  The Trustee's Motion to Exclude Mr. Schaeffer's Reports………………….....18

LEGAL ARGUMENT……..……………………………………………………….....18

      A.  Summary Judgment Standards…………..…………………………….... 19
      B.  There is No Dispute Regarding The Trustee's Case In Chief.…………………....20
      C.  The Defendant's Conduit Defense Fails………………………………….....21

          1.  The Defendant Is A Creditor And Cannot Be A Conduit……………………..21
          2.  An Agent Is Not Necessarily A Conduit…………………………………….23
          3.  The Defendant Exercised Dominion And Control Over the Transfers………..23
          4.  The Defendant Was Not A Party To Any Agreement With The
             Third-Parties Creating A Conduit Relationship.................................................26

      D.  The Defendant's Expert Reports Do Not Establish An Objective
          Ordinary Course of Business Defense………………………………………… 26
      E.  The Defendant Did Not Provide New Value………………………………... 27

CONCLUSION………………………………………………………………….....28

ME1 18890049v.1

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................ 19

*Andreini & Co. v. Pony Express Delivery Services, Inc.*, 440 F.3d 1296 (11th Cir. 2006) ......... 23

*In re Anton Noll, Inc.*, 277 B.R. 875 (1st Cir. BAP 2002) ........................................................... 24

*Bonded Fin. Servs., Inc. v. European Am. Bank,* 838 F.2d 890 (7th Cir. 1988 .................... 23, 24

*In re CVEO Corp.*, 327 B.R. 210 (Bankr. Del. 2005) ................................................................... 23

*In re Cypress Restaurants of Georgia, Inc.*, 332 B.R. 60 (Bankr. M.D. Fla. 2005) .............. 21, 23

*In re Dairy Stores, Inc.*, 148 B.R. 6 (Bankr. D.N.J. 1992) ........................................................... 21

*In re Filene's Basement*, 2013 Bankr. LEXIS 617 (Bankr. D.Del. Feb. 19, 2013) ............... 19, 20

*In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*,

    130 F.3d 52 (2d Cir. 1997) ...................................................................................................... 23

*In re Fonda Group, Inc.*, 108 B.R. 956 (Bankr D.N.J. 1989) ....................................................... 21

*In re Gruppo Antico, Inc.*, 359 B.R. 578 (Bankr. D. Del. 2007) ............................................ 23, 24

*In re Lambertson Truex, LLC*, 458 B.R. 155 (Bankr. D. Del. 2011) ................................. 21, 23, 24

*In re Lenox Healthcare, Inc.*, 343 B.R. 96 (Bankr. D. Del. 2006) ................................... 21, 23, 26

*Matsushita Electrical Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .......................... 19

*Nelmark v. Helms*, 2003 WL 1089363, at *3 (N.D. Ill. Mar. 11, 2003) ...................................... 24

*Toy King Distributors, Inc.*, 256 B.R. 1, 146 (Bankr. M.D. Fla. 2000) ....................................... 21

*In re U.S. Interactive, Inc.*, 321 B.R. 388 (Bankr. D. Del 2005) .................................................. 24

*In re 360networks (USA) Inc.*, 333 B.R. 194 (Bankr. S.D.N.Y. 2005) .................................... 21, 23

**Statutes**

Section 101(5)(A) .......................................................................................................................... 22

Section 101(10)(A) ......................................................................................................................... 21

Section 101(12) .............................................................................................................................. 21

Section 547(b) ................................................................................................................................ 20

**Rules**

Rule 56 of the Federal Rules of Civil Procedure ......................................................................... 19

ME1 18890049v.1

## STATEMENT OF NATURE AND STAGE OF PROCEEDINGS

On February 1, 2011 (the "Petition Date"), AES Thames, L.L.C. (the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §101 *et seq.* (the "Bankruptcy Code").  On January 23, 2012, the Court entered an Order converting the Debtor's case to a case under chapter 7 of the Bankruptcy Code.  On January 24, 2012, the Office of the United States Trustee appointed Charles M. Forman to serve as interim chapter 7 trustee (the "Trustee") for the Debtor's estate.  In accordance with section 702(d) of the Bankruptcy Code, the Trustee continues to serve as the chapter 7 trustee for the Debtor's estate.

On January 18, 2013, the Trustee commenced this adversary proceeding by filing a Complaint against P&M Brick, LLC (the "Defendant") [Docket No. 1] seeking to avoid and recover transfers totaling $677,482.63 (the "Transfers") under sections 547(b) and 550(a) of the Bankruptcy Code (the "Complaint").  On April 10, 2013, the Defendant filed an answer to the Complaint [Docket No. 5].  On June 20, 2013, the Court entered a Scheduling Order [Docket No. 11] establishing (a) December 31, 2013 as the deadline for the parties to complete fact discovery, (b) January 30, 2014 as the deadline for each party to provide expert reports for any issue for which such party bears the burden of proof, and (c) March 30, 2014 as the deadline for the parties to complete expert discovery.  By Stipulation, the parties agreed to extend the time to complete fact discovery until January 31, 2014 [Docket No. 29].

On August 27, 2013, the Trustee served the Defendant with his First Set of Interrogatories and his First Request to Produce Documents (the "Initial Discovery").  On October 2, 2013, the Defendant served its responses to the Trustee's Initial Discovery (the "Initial Discovery Responses").  On November 21, 2013, the Trustee's counsel deposed Michelle Hueth, the Defendant's designated representative under Rule 30(b)(6) of the Federal Rules of Civil Procedure.

1

On January 8, 2014, the Defendant filed a Motion for Authorization to File an Amended Answer [Docket No. 30] (the "Motion to Amend").  On January 21, 2014, the Trustee filed an opposition to the Defendant's Motion to Amend [Docket Nos. 32 and 33].  On January 27, 2014, the Defendant filed its Reply Memorandum of Law [Docket No. 34].  On May 1, 2014, the Court heard oral argument and entered an Order granting the Defendant's Motion to Amend [Docket No. 50].  On May 6, 2014, the Defendant filed its Amended Answer (the "Amended Answer") [Docket No. 51].

On January 28, 2014, the Defendant served a report from Harold A. Schaeffer in support of the Defendant's alleged defense under section 547(c)(2)(B) of the Bankruptcy Code.  On March 5, 2014, and after the Court mandated deadline, the Defendant served a second report from Mr. Schaeffer in support of the Defendant's alleged defense under section 547(c)(2)(B) of the Bankruptcy Code.  On March 6, 2014, the Trustee's counsel deposed Mr. Schaeffer.

On May 19, 2014, the Court entered an Order approving the parties' Stipulation which (a) extended fact discovery until October 31, 2014, and (b) set December 1, 2014 as the deadline for the Trustee to submit a report in response to Mr. Schaeffer's reports [Docket No. 53].

On May 22, 2014, the Trustee served the Defendant with Requests for Admissions, a Second Set of Interrogatories, a Second Request to Produce Documents and Notice of Deposition (the "Second Discovery Requests").  On June 20, 2014, the Defendant served its responses to the Trustee's Second Discovery Requests (the "Second Discovery Responses").

On September 13, 2014, the Trustee's counsel deposed Carver Laraway, the Defendant's president.  Also on September 13, 2014, the Trustee's counsel deposed Stephen Kelly, a designated representative of the Defendant under Rule 30(b)(6) of the Federal Rules of Civil Procedure

The Trustee also served discovery requests on the Third-Parties (defined below).

## SUMMARY OF ARGUMENT

In the Complaint, the Trustee seeks to avoid under section 547(b) of the Bankruptcy Code ("Section 547(b)") and to recover under section 550(a) of the Bankruptcy Code ("Section 550(a)") the Transfers, which were made on account of invoice numbers 4712, 4722, 4990, and 5131 (the "Invoices") issued by the Defendant to the Debtor.  A copy of the Complaint is attached as Exhibit A to the Certification of Harry M. Gutfleish (the "Gutfleish Certification") submitted herewith.

The Defendant has admitted that the Debtor was indebted to it for the amounts billed in the Invoices, that the Debtor made the Transfers, that the Defendant received and deposited the Transfers in a corporate bank account, and that the Transfers were made within 90 days prior to the Petition Date.  The Defendant does not rebut, and has not produced any documentation or other evidence to rebut, the presumption that the Debtor was insolvent during the 90 days preceding the Petition Date.  The Defendant does not dispute, and has not produced any documentation or other evidence to dispute, that the Transfers enabled the Defendant to receive more on account of the Invoices than it would have in this chapter 7 case.  Therefore, the Trustee satisfies, and the Defendant does not dispute, the elements of the Trustee's *prima facie* case under sections 547(b) and 550(a) of the Bankruptcy Code.

In the Amended Answer, a copy of which is attached as Exhibit B to the Gutfleish Certification, the Defendant asserts that it was an agent and a mere conduit for payments owed to third party providers of goods and services.  In support, of this alleged defense, the Defendant alleges in paragraphs 30-36 of the Amended Answer that:

> 30.    Specialty Minerals provided the minerals and/or specialty stone materials shipped to the Debtor or obtained on the Debtor's behalf.

> 31.    CS&G Trucking provided trucking services for transportation of the minerals and/or specialty stone materials shipped to or obtained on the Debtor's behalf.

3

32.     White Near Coastal provided barging services for transportation of the minerals and/or specialty stone materials shipped to or obtained on the Debtor's behalf.

33.     Eastern Barge provided barging services for transportation of the minerals and/or specialty stone materials shipped to or obtained on the Debtor's behalf.

34.     Mohawk Northeast, Inc. provided barging services for transportation of the minerals and/or specialty stone materials shipped to or obtained on the Debtor's behalf.

35.     The alleged transfers made by the Debtor to Defendant included payment for funds due to Specialty Materials, CS&G Trucking, White Near Coastal, Eastern Barge and Mohawk Northeast, Inc.

36.     Defendant was obligated to remit payments to Specialty Materials, CS&G Trucking, White Near Coastal, Eastern Barge and Mohawk Northeast, Inc. upon its receipt of alleged transfers from Debtor for the minerals and/or specialty stone materials shipped to or obtained on the Debtor's behalf.

In its Reply Memorandum in support of the Motion to Amend [Docket No. 34], the Defendant represented that it "acted essentially as a disbursing agent for the benefit of the other parties in the transaction with the Debtor."  Likewise, the Defendant argued that "it was a mere conduit for payments to other parties in the supply chain for the limestone supply to the Debtor and, therefore, is not liable to the Trustee or the Debtor's estate for monies received from the Debtor during the pre-petition preference period."

As explained below, the Defendant was not a conduit because:

A.     The Defendant was a creditor of the Debtor at the time of each of the Transfers.

B.     The Defendant's admissions confirm that there is no written agreement under which the Defendant was to serve as a conduit.

C.     The affidavits from Specialty Minerals, Inc., Mohawk Northeast, Inc., and Eastern Barge/White Near Coastal, attached as Exhibits L, M, and N to the Gutfleish

4

Certification, confirm that none of the entities had any agreement with the Defendant under which the Defendant was to serve as a conduit.

D.     The Defendant's admissions further confirm that the Defendant had no agreement with the Third-Parties (defined below) under which the Defendant was to segregate funds, hold funds in escrow, or hold funds in trust for the benefit of the Third-Parties (defined below).

E.     The Defendant's bank statements and responses to the Trustee's discovery requests demonstrate that the Defendant exercised dominion and control over the Transfers once received and no restrictions were placed on the Defendant's bank account.

F.     The Defendant's proposed conduit defense is not supported by any documents produced in this matter.

As a matter of law, the Defendant was not a conduit.

Although the Defendant asserts a defense under the objective prong of the ordinary course of business defense under section 547(c)(2)(B) of the Bankruptcy Code, the Defendant cannot satisfy its burden of proof.  In support of this alleged defense, the Defendant offered the two reports from Mr. Schaeffer.  However, Mr. Schaeffer has testified that his reports are not applicable to the business transactions (and industry) alleged in the Amended Answer.  Mr. Schaeffer also relied on anonymous data from a third party that advises its customers not to use its data for the purpose for which Mr. Schaeffer used the data.  Therefore, the Trustee has moved to exclude both reports.  As discussed in that motion, this Court may preclude the reports if it finds that they are either irrelevant or unreliable.

Carver Laraway, the Defendant's president, testified that the Defendant retained $215,170.59 of the Transfers but that he could not determine what percentage of the funds retained

5

by the Defendant are attributed to stevedoring services provided by the Defendant and what percentage are attributed to profit for arranging goods and services provided by the Third-Parties (defined below) to the Debtor.  Thus, as further discussed in the Trustee's motion to exclude Mr. Schaeffer's reports, the only analysis offered by Mr. Schaeffer that is potentially relevant is his discussion of the Marine Cargo Handling industry, but only to the extent of the funds retained by the Defendant -- which, at best total $215,170.59 -- for stevedoring services rendered.  To the extent that the Court defers ruling on the request to exclude Mr. Schaeffer's reports as they pertain to the $215,170.59 of funds retained, the Trustee is still entitled to summary judgment on the balance of the Transfers, or $462,412.04, and preserves all rights to attack the reports on relevancy and reliability grounds at trial.

The Defendant also asserts a defense that it provided new value to the Debtor under section 547(c)(4) of the Bankruptcy Code on the basis of the facts set forth in its Proofs of Claim. However, the Defendant admits that it never delivered the limestone -- its contention of new value -- to the Debtor.  Therefore, this alleged defense is baseless.

## STATEMENT OF FACTS

### A.    The Transfers

Prior to the Petition Date, the Debtor owned and operated a coal-fired power plant located in Montville, Connecticut and maintained a bank account at Bank of America, N.A. (ending in 6888) (the "Disbursement Account").

On September 30, 2010, the Defendant issued invoice number 4712 to the Debtor requesting payment of $108,218.83 for 3,329.81 tons of limestone that it sold and shipped to the Debtor.  Also on September 30, 2010, the Defendant issued invoice number 4722 to the Debtor requesting payment of $99,481.20 for 3,060.96 tons of limestone that it sold and shipped to the

6

Debtor.  The Debtor paid invoice numbers 4712 and 4722 by wire transfer from the Disbursement Account on November 5, 2010, which was received and deposited into the Defendant's business checking account at First Niagara Bank, N.A. (ending in 1424) (the "Defendant's Account").

On October 30, 2010, the Defendant issued invoice number 4990 to the Debtor requesting payment of $221,119.50 for 6,317.70 tons of limestone that it sold and shipped to the Debtor.  The Debtor paid invoice number 4990 by wire transfer from the Disbursement Account on December 14, 2010, which was received and deposited into the Defendant's Account.

On November 23, 2010, the Defendant issued invoice number 5131 to the Debtor requesting payment of $248,663.10 for 7,104.66 tons of limestone that it sold and shipped to the Debtor.  The Debtor paid invoice number 5131 by wire transfer from the Disbursement Account on December 20, 2010, which was received and deposited into the Defendant's Account.

The Invoices are attached as Exhibit C to the Gutfleish Certification.

All of the Invoices direct that payment shall be made payable to "P&M Brick, LLC."

**B.    The Defendant's Account**

The Transfers were made on November 5, 2010, December 14, 2010 and December 20, 2010.  The bank statements for the Defendant's Account for November 2010 and December 2010 are attached as Exhibit D to the Gutfleish Certification.

Those statements reflect that (a) the Defendant's Account was designated as the Defendant's checking account, (b) the total deposits into the Defendant's Account from November 1, 2010 through December 31, 2010 were $2,548,349.27, (c) the total disbursements out of the Defendant's Account from November 1, 2010 through December 31, 2010 were $2,405,517.87, (d) the Defendant deposited funds from many sources other than the Debtor, and (e) the Defendant disbursed funds to many parties other than Specialty Minerals Inc. ("Specialty"), Carver Sand &

Gravel, LLC ("CS&G"), White Near Coastal and Eastern Barge (collectively "Eastern"), and

Mohawk Northeast, Inc. ("Mohawk" and collectively, the "Third-Parties").

**C.      The Defendant's Proofs Of Claim**

On June 16, 2011, the Defendant filed a proof of claim against the Debtor's estate

designated on the Claims' Register as Claim Number 48.  A copy of this proof of claim is attached

as Exhibit E to the Gutfleish Certification.  In its proof of claim, the Defendant represented under

penalty of perjury that:

> On or about October 2010, P&M Brick, LLC ("P&M") and AES Thames, LLC
> ("debtor") entered into a contract for the sale and delivery of 19,800 tons of
> Limestone material called ECO-CAL ® FGD PLUS. The terms of the agreement
> were that P&M would acquire the material from Specialty Minerals in Adams MA,
> truck the material to the Port of Coeymans, and then deliver the material to the
> debtor by barges owned and operated by P&M. Because of the quantity of material,
> it was agreed that the material would need to be delivered to the debtor on at least
> three separate barge trips. The agreed upon cost for the sale and delivery of the
> material by the P&M to the debtor was $35.00 a ton.
>
> Immediately after entering into the contract, the creditor began trucking the
> material from Adams, MA to the Port of Coeymans. The debtor gave approval to
> send a first shipment of 7,104.66 tons in November 2010, and that tonnage was
> delivered to the debtor on two separate barges on November 16 and November 18,
> respectively. The total invoice for that shipment was $248,663.10. This invoice was
> paid by the debtor in the regular course of business.
>
> A second shipment and part of a third shipment consisting of 9,142.33 tons was
> obtained from Specialty Minerals and trucked to the Port of Coeymans with the last
> truck load arriving in December 2010…. During this time, P&M was continuously
> trying to get approval from the debtor to send the shipment by barge to the debtor,
> but the debtor was unresponsive. On January 19, 201 1, P&M spoke with Jim
> Oleksiak from the debtor. Mr. Oleksiak indicated that the debtor was still not ready
> for the shipment, but that P&M should send him a breakout of the charges for the
> 9,142.33 tons of material currently sitting on P&M's dock so that P&M could be
> reimbursed for that material. Mr. Oleksiak did not dispute that payment for this
> material was owed. On January 19, 201 1, P&M sent Mr. Oleksiak an email with
> the charges for the 9,142.33 tons. P&M then followed up by sending the debtor an
> invoice for the charges incurred as of that time for 9,142.33 tons. The invoice
> reflects a rate of $24.75 per ton, as the shipping charges of approximately $10.00
> per ton had not yet been incurred. The total value of the invoice was $226,265.24.

8

The debtor then filed for bankruptcy. The 9,142.33 tons of limestone continues to be stored on P&M's dock awaiting approval from the debtor for shipment.

P&M makes this proof of claim for the damages incurred of $226,265.24….

The Defendant filed a substantially similar proof of claim on February 21, 2012, designated on the Claims Register as Claim Number 66.

### D.     The Defendant's Initial Discovery Responses

The Defendant's responses to the Trustee's First Set of Interrogatories are attached as Exhibit F to the Gutfleish Certification.

In response to the Trustee's initial Interrogatory Number 8, the Defendant conceded that:

Defendant received $207,700.03 on November 5, 2010 from the Debtor. Defendant received $221,119.50 on December 14, 2010 from the Debtor. Defendant received $248,663.10 on December 20, 2010 from the Debtor. All such payments were deposited into the [Defendant's Account].

In response to the Trustee's initial Interrogatory Number 9, the Defendant conceded that "[e]ach of the Transfers was received by Defendant and applied to an invoice sent to Debtor for material and services provided by Defendant to Debtor."

In response to the Trustee's initial Interrogatory Number 10, the Defendant explained and conceded that:

In general, P&M Brick, LLC supplied de-dusted and/or washed limestone to Debtor. In addition to supplying the limestone, P&M Brick, LLC performed a variety of services, including purchasing such limestone from producers; arranging for delivery by truck of such limestone to the P&M Brick, LLC facility in Coeymans, New York; unloading, stockpiling, and storing such limestone at the P&M Brick, LLC facility in Coeymans, New York; loading such limestone on barges; and coordinating shipment by barge of such limestone to Debtor's facility in Uncasville, Connecticut. With respect to the $207,700.03 payment made by Debtor to Defendant on November 5, 2010, Defendant had shipped 3,060.96 tons of limestone to Debtor on or about September 15, 2010, and shipped an additional 3,329.81 tons of limestone to Debtor on or about September 17, 2010. With respect to the $221,119.50 payment made by Debtor to Defendant on December 14, 2010, Defendant had shipped 6,317.70 tons of limestone to Debtor on or about October

9

26, 2010.  With respect to the $248,663.10 payment made by Debtor to the Defendant on December 20, 2010, Defendant had shipped 3,564.55 tons of limestone to Debtor on or about November 16, 2010, and shipped an additional 3,540.11 tons of limestone to Debtor on or about November 18, 2010.

**E.     The Defendant's Testimony**

On November 21, 2013, the Trustee's counsel deposed Michelle Hueth, the person designated by Defendant under Rule 30(b)(6) of the Federal Rules of Civil Procedure.  Copies of certain excerpts of that deposition transcript are attached as Exhibit G to the Gutfleish Certification.

When asked about the goods and services that the Defendant provided to the Debtor, Ms. Heuth testified that:

Q: What services did P&M Brick render to AES Thames?

A:  In the case of AES Thames, we provided the stevedoring of the products, so the materials from Specialty Minerals, the trucking from Specialty Minerals to our port, the stevedoring service to load the barge, chartering the barge to go to their plant in Connecticut so we handled coordinating all of, all of that.

* * *

Q:  So P&M purchased the limestone from Specialty Minerals.  Correct?

A:  Correct.

Q:  And P&M then with its own facilities would truck the limestone down to Coeymans.  Correct?

A:  A sister company.

Q:  To P&M Brick?

A:  Right.  It had a separate trucking company.

Q:  So P&M arranged for the trucking of the limestone from Adams, Massachusetts down to Coeymans.  Correct?

A:  Correct.

10

Q:  Once at Coeymans, P&M Brick then loaded the limestone on the barges. Correct?

A:  Correct.

Q:  And then P&M Brick arranged for the transportation of those barges from Coeymans, NY to AES Thames' facility in Uncasville, Connecticut.  Correct?

A:  Correct.

[Gutfleish Certification, Exhibit G, page 44, line 2, page 45, line 23].

When asked about the Invoices, Ms. Hueth testified that:

Q:  What services did P&M Brick provide to AES Thames that are invoiced in invoice number 2872?

A:  The services, the stevedoring services, and it includes the material, the trucking the barging[.]

Q:  And again, by material we are referring to the limestone reference in this invoice.  Correct?

A:  Yes.

Q:  And this is limestone that P&M Brick previously purchased from Specialty Minerals.  Correct?

A:  Yes.

****

Q:  The terms are net 30.  Correct?

A:  Yes.

[Gutfleish Certification, Exhibit G, page 48, lines 4-17; page 51, lines 2-3].

Ms. Hueth provided similar testimony with respect to each of the Invoices [Gutfleish Certification, Exhibit G, page 57 line 20 - page 66, line 21].

Ms. Hueth also confirmed that (a) the debt reflected in Proof of Claim Number 48 "is for product that [the Defendant] purchased for [the Debtor] that was never delivered to the [the

Debtor]", and that (b) the Debtor never used or consumed the limestone discussed in Proof of Claim Number 48 [Gutfleish Certification, Exhibit G, page 123, line 8 - page 124, line 20].

On August 13, 2014, the Trustee's counsel deposed Stephen Kelly, the second representative designated by Defendant under Rule 30(b)(6) of the Federal Rules of Civil Procedure.  Copies of certain excerpts of that deposition transcript are attached as Exhibit X to the Gutfleish Certification.

When asked about the Defendant's business relationship with the Debtor, Mr. Kelly testified that:

Q.  What role did P&M Brick play in the transactions?

A.  We basically handled the logistics of getting the material from Adams, Massachusetts, to AES Thames.

Q.  And what was involved in handling the logistics?

A.  Picking up the material, getting an area at our dock facility to store the material, loading the material, organizing the barges, coordinating with AES Thames for timing, and making sure they were happy with the material quality, and so forth.

[Gutfleish Certification, Exhibit X, page 16, lines 8-20].

When asked about the Defendant's relationship with the Third-Parties, Mr. Kelly testified that:

- Specialty Minerals did not demand that (a) P&M segregate the funds paid by the Debtor, (b) escrow the funds paid by the Debtor, or (c) hold the funds paid by the Debtor in trust. [Gutfleish Certification, Exhibit X, page 21, line 24 – page 22, line 10].

- CS&G did not demand that (a) escrow the funds paid by the Debtor, or (b) hold the funds paid by the Debtor in trust.  [Gutfleish Certification, Exhibit X, page 28, line 4 – page 29, line 2].

- The only agreement that the Defendant had with White Near Coastal and Eastern barge was that P&M "needed" 45 day payment terms.  [Gutfleish Certification, Exhibit X, page 35, line 17 – page 36, line 13].

- White Near Coastal and Eastern Barge did not demand that (a) P&M segregate the funds paid by the Debtor, (b) escrow the funds paid by the Debtor, or (c) hold the funds paid by the Debtor in trust. [Gutfleish Certification, Exhibit X, page 40, line 24 – page 42, line 24].

- With respect to the transactions and invoices for which the Transfers were made, Specialty Minerals, White Near Coastal, Eastern Barge did not agree that P&M only had to pay their respective invoices if the Debtor paid P&M. [Gutfleish Certification, Exhibit X, page 24, line 25 – page 25, line 14, page 44, lines 10-24].

- He could not recollect any discussions with Mohawk Northeast. [Gutfleish Certification, Exhibit X, page 45, lines 14-19].

- None of the Third Parties placed any restrictions on P&M's use of the funds paid by the Debtor. [Gutfleish Certification, Exhibit X, page 55, line 3 – page 56, line 25].

## F.    The Defendant's Second Discovery Responses

The Defendant's responses to the Trustee's requests for admissions are attached as Exhibit H to the Gutfleish Certification.  In its responses, the Defendant admitted the following, among other admissions:

- The Defendant sent invoice numbers 4712, 4722, 4990 and 5131 to the Debtor.  The amount due in the Invoices was payable to the Defendant, the Defendant was the initial transferee and the Defendant deposited the Transfers from the Debtor into its Account in payment of the Invoices. [Response Numbers 2 through 20].

- The Defendant's Account is solely maintained in the Defendant's name. [Response Number 21].

- The Defendant deposited funds in the Defendant's Account from sources other than the Debtor.  [Response Number 22].

- The Defendant had control over all funds on deposit in the Defendant's Account.  [Response Number 23].

- The Defendant's Account is not a trust account.  [Response Number 24].

- The Defendant's Account is not an escrow account.  [Response Number 25].

13

- The Defendant's Account is not a segregated account maintained for the benefit of any third party.  [Response Number 26].

- The Third-Parties did not have the right to withdraw funds from the Defendant's Account and did not have control over funds in the Defendant's Account.  [Response Numbers 27 through 36].

- The Defendant paid funds from the Defendant's Account to parties other than the Third-Parties.  [Response Number 37].

- The Defendant received funds into the Defendant's Account from sources other than the Debtor [Response Number 38].

- The Defendant has no knowledge of, nor any evidence of, any documents evidencing an obligation to (a) segregate money paid by the Debtor to the Defendant; (b) hold funds received from the Debtor in trust for any third party; or (c) hold funds received from the Debtor in escrow for any third party.  [Response Numbers 39 through 41].

- The Defendant has no written agreement with the Third-Parties or the Debtor under which the Defendant was obligated to segregate funds, hold funds in escrow, or hold funds in trust that it received from the Debtor for the benefit of the Third-Parties.  [Response Numbers 42 through 61].

- The Defendant has no written agreement with the Debtor establishing that the Defendant was an agent or conduit for the Third-Parties.  [Response Numbers 62 through 66].

- The Defendant and the Third-Parties did not submit a joint proposal to the Debtor related to the transactions between the Defendant and the Debtor alleged in the Complaint.  [Response Numbers 77 through 81].

- The Third-Parties did not instruct the Debtor to pay the Defendant for the amounts the Third-Parties invoiced to the Defendant.  [Response Numbers 108 through 112].

- The limestone referenced in Proof of Claim Number 48 and Proof of Claim Number 66 was not delivered to the Debtor's facility in Uncasville, Connecticut.  [Response Numbers 126 & 130].

The Defendant also admitted that it was not aware of any agreements between the Debtor and Specialty, CS&G, Eastern, or Mohawk relating to the Defendant's transactions with the

14

Debtor, let alone establishing that the Defendant was a conduit for those entities [Response Numbers 67-76].

The Defendant's responses to the Trustee's Second Set of Interrogatories are attached as Exhibit I to the Gutfleish Certification.

Interrogatory Number 19 of the Trustee's Second Set of Interrogatories requests the following:

> Identify all agreements under which the Defendant was required to hold payments it received from a customer in trust or in escrow for a provider of goods or services of the Defendant or the Defendant's customer.

In response, the Defendant represented that "**it is not a party to any such agreements**." (emphasis added).

Interrogatory Number 20 of the Trustee's Second Set of Interrogatories requests the following:

> Identify all agreements under which the Defendant was required to segregate payments it received from a customer for the benefit of a provider of goods or services of the Defendant or the Defendant's customer.

In response, the Defendant represented that "**it is not a party to any such agreements**." (emphasis added).

The Defendant's responses to the Trustee's second request to produce documents are attached as Exhibit J to the Gutfleish Certification. In those responses, the Defendant concedes that "**it is not in possession of any**" documents evidencing any contracts or agreements entered into between the Debtor and the Third-Parties relating to the transactions between the Defendant and the Debtor alleged in the Complaint, the Defendant's alleged defenses in the Amended Answer, the Defendant's professed obligation to pay the Third-Parties from the Transfers, or any

obligation of the Defendant to segregate, hold in trust or held in escrow the Transfers for the benefit of the Third-Parties.

**G.      The Defendant's Schedule of Transactions**

In response to the Trustee's Second Set of Interrogatories, the Defendant produced a schedule of transactions attached as Exhibit K to the Gutfleish Certification.  In that schedule, the Defendant details the invoices from and payments to the Third-Parties and the payments made by the Debtor on account of the Invoices.  The schedule reflects that (a) for the limestone that the Defendant purchased from Specialty and then sold, delivered and invoiced to the Debtor in Invoice Number 4712, the Defendant paid Specialty well before the Debtor's payment of Invoice Number 4712, (b) for the limestone that the Defendant purchased from Specialty and then sold, delivered and invoiced to the Debtor in Invoice Number 4722, the Defendant paid Specialty well before the Debtor's payment of Invoice Number 4722, and (c) for the barging services rendered and invoiced to the Debtor in the Invoices, the Defendant paid the barging invoices between three months and five months after the Debtor paid the respective Invoices.

**H.      The Specialty, Mohawk and Eastern Affidavits**

On May 29, 2014, the Trustee served a subpoena on Mohawk.  In addition to producing documents, Mohawk provided the affidavit of Allan R. Heinke attached as Exhibit L to the Gutfleish Certification.  In that affidavit, Mr. Heinke states that:

- Mohawk issued Invoice No. 20100151 totaling $1,001.70 to the Defendant on December 22, 2010.

- The Defendant made payment on Invoice No. 20100151 on March 22, 2011.

- Mohawk had no agreements or understandings with the Defendant that the Defendant was acting as a conduit for its benefit.

16

- Although Mohawk was aware that the good or services it provided to the Defendant were in connection with the Defendant's relationship with the Debtor, Mohawk (1) had no agreement to wait until after the Debtor paid the Defendant for it to be paid, (2) had no agreement that it would be paid only if the Debtor paid the Defendant, (3) had no agreement that the Defendant was to segregate or hold in trust funds from the Debtor for its benefit, and (4) had no knowledge that the Defendant was acting as a conduit between it and the Debtor.

On June 2, 2014, the Trustee served a subpoena on Specialty.  In addition to producing documents, Specialty provided the affidavit of Jay Etsy attached as Exhibit M to the Gutfleish Certification.  In that affidavit, Mr. Etsy states that:

- Between December 30, 2009 through February 7, 2011, Specialty sold limestone to the Defendant.

- Although Specialty was aware that the limestone it sold to the Defendant would be delivered to the Debtor, Specialty had no agreement to wait until after the Debtor paid the Defendant for it to be paid, had no agreement that it would be paid only if the Debtor paid the Defendant, had no agreement that the Defendant was to segregate or hold in trust funds from the Debtor for its benefit.

- Specialty's business relationship with the Defendant was similar to its ordinary course of business with similar customers.

On May 29, 2014, the Trustee served a subpoena on Eastern Barge. In addition to producing documents, Eastern Barge provided the affidavit of Roy White attached as Exhibit N to the Gutfleish Certification.  In that affidavit, Mr. White states that:

- Between December, 2009 through December, 2010, Eastern issued the following invoices to P&M Brick LLC ("P&M") for barging services: (a) Invoice Number 09-2735 in the amount of $26,500 dated December 7, 2009; (b) Invoice Number 10-1685 in the amount of $21,450 dated August 6, 2010; (c) Invoice Number 10-1688 in the amount of $22,050 dated August 6, 2010; (d) Invoice Number 10-1860 in the amount of $32,165 dated November 4, 2010; (e) Invoice Number 10-1912 in the amount of $18,400 dated November 17, 2010; (f) Invoice Number 10-1965 in the amount of $28,750 dated December 9, 2010; and (g) Invoice Number 10-1963 in the amount of $20,405 dated December 9, 2010.

- Eastern received payments from P&M on account of those invoices on the following below: (a) Invoice Number 09-2735 on March 19, 2010; (b) Invoice Number 10-1685 on November 1, 2010; (c) Invoice Number 10-1688 on

17

November 1, 2010; (d) Invoice Number 10-1860 on April 8, 2010;  (e) Invoice Number 10-1912 on April 18, 2010; (f) Invoice Number 10-1965 on May 23, 2010; and (g) Invoice Number 10-1963 on May 23, 2010.

- Eastern had no relationship with the Debtor.

- Eastern was not aware that the barging services it provided to P&M were in connection with P&M's relationship with the Debtor.  Eastern had no agreement that it would be paid only if the Debtor paid P&M and had no agreement that P&M was to segregate or hold in trust or escrow funds paid by the Debtor to P&M for Eastern's benefit.

- Eastern had no agreements or understandings with P&M that P&M was acting as a conduit for the benefit of Eastern in connection with P&M's relationship with the Debtor.

- Eastern's business relationship with P&M was similar to its ordinary course of business with similar customers.  Eastern provided barging services to P&M, issued invoices to P&M for payment, and expected payment from P&M for the amounts invoiced.

I.    **The Trustee's Motion to Exclude**
      **Mr. Schaeffer's Reports**

Contemporaneously, the Trustee has filed a Motion to Exclude Mr. Schaeffer's reports because, among other reasons, Mr. Schaeffer testified that his reports are irrelevant to the business transactions alleged in the Amended Answer and because the reports rely on a wholly unreliable methodology.  That motion, and all supporting pleadings and exhibits, are incorporated herein by reference.

<u>**LEGAL ARGUMENT**</u>

In this Motion, the Trustee seeks summary judgment on Counts One and Two of the Complaint to avoid and recover the amount of the Transfers under sections 547(b) and 550(a) of the Bankruptcy Code.

A.    **Summary Judgment Standards**

18

The Trustee seeks summary judgment under Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"), made applicable to this adversary proceeding under Rule 7056 of the Federal Rules of Bankruptcy Procedure.  In accordance with Rule 56(c)(2), "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

In *Matsushita Electrical Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986) (citations omitted), the Supreme Court explained that the non-moving party must show more than "some metaphysical doubt as to the material facts," he or she must come forward with specific facts showing a genuine issue for trial.  *Accord In re Filene's Basement*, 2013 Bankr. LEXIS 617 at *7 (Bankr. D.Del. Feb. 19, 2013).

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), the Supreme Court explained that:

> As to materiality, the substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.

The Supreme Court further explained that :

> "There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party….  If the evidence is merely colorable,…, or is not significantly probative,…, summary judgment may be granted."

*Id.* at 249 (citations omitted).

In *In re Filene's Basement*, 2013 Bankr. LEXIS 617 at *7-8, this Court explained that:

> Summary judgment cannot be avoided by introducing only "a mere scintilla of evidence," *Sarko v. Penn-Del Director Co.*, 968 F. Supp. 1026, 1031 (E.D.Pa.

1997) (citation omitted), *aff'd* 189 F.3d 464 (3d Cir. 1999), or by relying on "conclusory allegations, improbable inferences and unsupported speculation." *J. Geils Band Emp. Benefit Plan. v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1251 (1st Cir. 1996). "Brash conjecture coupled with earnest hope that something concrete will materialize, is insufficient to block summary judgment." *Dow. v. United Bhd. of Carpenters*, 1 F.3d 56, 58 (1st Cir. 1993).

**B.    There Is No Dispute Regarding
The Trustee's Case In Chief**

Under section 547(b) of the Bankruptcy Code, the Trustee may avoid a transfer of a debtor's interest in property (1) made to or for the benefit of a creditor (2) on account of an antecedent debt owed by the debtor before such transfer was made (3) made while the debtor was insolvent (4) made within 90 days of the debtor's bankruptcy filing (5) that enables a creditor to receive more than it would in a case under chapter 7 of the Bankruptcy Code had the transfer not been made and such creditor received payment of its debt as provided by the provisions of the Bankruptcy Code.

The Defendant has admitted to providing the services identified in the Invoices.  The Defendant has admitted to receiving the Transfers on account of the corresponding Invoices.  The Defendant has admitted that it was a creditor of the Debtor at the time of each of the Transfers.  As demonstrated in the bank statements attached as Exhibit D to the Gutfleish Certification, the Transfers cleared the Debtor's bank account within 90 days prior to the Petition Date.

In accordance with section 547(f) of the Bankruptcy Code, the Debtor is presumed to have been insolvent during the 90 days preceding the Petition Date.  The Defendant has not rebutted this presumption.

As set forth in the Gutfleish Certification, (a) after certain (but not all) payments to secured creditors, professionals, and other administrative expenses, there remains a balance of approximately $800,000 in the Debtor's bankruptcy estate, (b) a portion of these funds were

ME1 18890049v.1

received from a sale of the Debtor's assets and may be subject to a first priority claim of Connecticut Light and Power Company, and (c) as reflected in the Claims Register maintained by the Clerk of the Court, the proofs of claim filed against the estate total $12,522,730.95.  Thus, the unsecured creditors will not receive a 100% distribution from the Debtor's bankruptcy estate.  The Defendant has not offered anything to dispute this conclusion.

Based on the foregoing, the Trustee has established his entitlement to judgment against the Defendant avoiding the Transfers under sections 547(b) and 550(a) of the Bankruptcy Code.

## C.    The Defendant's Conduit Defense Fails

The Defendant bears the burden of proving that it is entitled to the alleged conduit defense. *See In re Lambertson Truex, LLC*, 458 B.R. 155, 159 (Bankr. D. Del. 2011).

### 1.    The Defendant Is A Creditor And Cannot Be A Conduit

"Courts have made it clear that to be a conduit, one cannot be a creditor and receive a payment to satisfy a debt - this is the 'hallmark' of a preferential transfer."  *In re Lenox Healthcare, Inc.*, 343 B.R. 96, 105 (Bankr. D. Del. 2006), (*citing In re 360networks (USA) Inc.*, 333 B.R. 194, 202 (Bankr. S.D.N.Y. 2005); *In re Dairy Stores, Inc.,* 148 B.R. 6, 9 (Bankr. D.N.J. 1992); *In re Fonda Group, Inc.*, 108 B.R. 956, 959-60 (Bankr. D.N.J. 1989); *In re Cyprus Rests. of Ga., Inc.*, 332 B.R. 60, 65 (Bankr. M.D. Fla. 2005)); *In re Toy King Distributors, Inc.*, 256 B.R. 1, 146 (Bankr. M.D. Fla. 2000).

Section 101(12) of the Bankruptcy Code defines a debt as a "liability on a claim."  Section 101(10)(A) of the Bankruptcy Code defines a creditor as an "entity that has a claim against the debtor that arose at the time or before the order for relief concerning the debtor."  Section 101(5)(A) of the Bankruptcy Code defines a claim as a "right to payment, whether or not such right

21

is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured."

Throughout this adversary proceeding and in its Proofs of Claim, the Defendant has repeatedly explained that it procured, stored and delivered limestone to the Debtor, that it issued each of the Invoices for the debt owed by the Debtor in consideration for the procurement, storage and delivery of the limestone, that the Debtor made the Transfers to satisfy the debts memorialized in each of the Invoices, and that the Transfers were deposited in the Defendant's Account.  As the Defendant itself aptly explained, **"[e]ach of the Transfers was received by Defendant and applied to an invoice sent to Debtor for material and services provided by Defendant to Debtor."**  [Gutfleish Certification, Exhibit F, Response Number 9] (emphasis added).

In its responses to the Trustee's Request for Admissions, the Defendant admits that it provided the goods or services identified in Invoices and that the amounts due under the Invoices were payable to the Defendant.

Ms. Hueth's deposition further confirms that: (a) the Defendant purchased limestone from Specialty which it then sold to the Debtor; (b) the Defendant unloaded the limestone from trucks upon delivery to its facility and then loaded the limestone onto barges to be shipped to the Debtor; (c) the Defendant arranged for the transportation of the limestone by vessel or barges to the Debtor's facility; and (d) the Defendant invoiced and received payment from the Debtor for the goods and services that the Defendant provided to the Debtor.

Since the Debtor owed a debt to the Defendant on the date that each of the Transfers was made, and each of the Transfers satisfied a debt owed by the Debtor, the Defendant cannot be a conduit.

22

### 2.    An Agent Is Not Necessarily A Conduit

"Courts have held that the existence of a principal-agent relationship is not dispositive in establishing the 'mere conduit' defense." *In re Lenox Healthcare*, 343 B.R. at 105 (*citing to In re 360networks (USA) Inc.*), 333 B.R. at 203, n.10; *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 130 F.3d 52, 58-59 (2d Cir. 1997)); *accord Andreini & Co. v. Pony Express Delivery Services, Inc.*, 440 F.3d 1296, 1301 (11th Cir. 2006) ("even entities that have special legal relationships with the debtor-transferor can be initial transferees when they do, in fact, take legal control of an avoidable transfer").  The fact that the Defendant owed others for the limestone sold and barging services provided to the Debtor cannot, by itself, establish that the Defendant is a conduit.  *See, e.g., In re Cypress Restaurants of Georgia, Inc.*, 332 B.R. at 65 (citations omitted) (finding that a transferee's duty to pay its own debts out of the revenues that it earns from the preferential transfers in question does not make it a conduit).

Thus, even if the Defendant served as an agent for the Third Parties relating to the Defendant's transactions with the Debtor, that proof alone would not suffice.

### 3.    The Defendant Exercised Dominion
### And Control Over the Transfers

To be a conduit, the Defendant must establish that it "lacked dominion and control over the transfer because the payment simply passed through its hands and it had no power to redirect the funds to its own use." *In re Gruppo Antico, Inc.,* 359 B.R. 578, 585 (Bankr. D. Del. 2007); *see also, In re CVEO Corp.*, 327 B.R. 210, 216 (Bankr. D. Del. 2005) (*citing Bonded Fin. Servs., Inc. v. European Am. Bank,* 838 F.2d 890, 893 (7th Cir.1988)); *In re Lenox Healthcare*, 343 B.R. at 103; *In re Lambertson Truex, LLC*, 458 B.R. at 159.  Conversely, "[t]o have dominion and control

23

means to be capable of using the funds 'for whatever purpose [the defendant] wishes….'" *Id.,* *quoting In re Anton Noll, Inc.*, 277 B.R. 875, 879 (1st Cir. BAP 2002).

An entity is not a conduit where the funds in question were not placed in a special fund but were deposited into a general use bank account. *See In re Lambertson Truex, LLC*, 458 B.R. at 160; *In re U.S. Interactive, Inc.,* 321 B.R. 388, 396 (Bankr. D. Del 2005) (*citing Bonded Fin. Servs., Inc.,* 838 F.2d at 893)). Likewise, an entity is not a conduit if it commingles the funds in question with general funds. *Nelmark v. Helms,* 2003 WL 1089363, at *3 (N.D. Ill. Mar. 11, 2003).

The bank statements for the Defendant's Account for November 2010 and December 2010 (Exhibit D to the Gutfleish Certification) reflect that (a) the Defendant's Account was designated as the Defendant's checking account, (b) the total deposits into the Defendant's Account from November 1, 2010 through December 31, 2010 were $2,548,349.27, (c) the total disbursements out of the Defendant's Account from November 1, 2010 through December 31, 2010 were $2,405,517.87, (d) the Defendant deposited funds from many sources other than the Debtor, and (e) the Defendant disbursed funds to many parties other than the Third-Parties.

As demonstrated by its discovery responses, the Defendant admits that (1) the Defendant is the initial transferee of the Transfers, (2) the Defendant's Account is solely maintained in the Defendant's name, (3) the Defendant deposited funds in the Defendant's Account from sources other than the Debtor, (4) the Defendant had control over all funds on deposit in the Defendant's Account, (5) the Defendant's Account is not a trust account, (6) the Defendant's Account is not an escrow account, (7) the Defendant's Account is not a segregated account maintained for the benefit of any third party, (8) the Third-Parties did not have the right to withdraw funds from the Defendant's Account, (9) the Third-Parties  did not have any control over funds deposited into the

Defendant's Account, (10) the Defendant paid funds from the Defendant's Account to parties other than the Third-Parties, and (11) the Defendant received funds into the Defendant's Account from sources other than the Debtor.

The Defendant further admits that "it is not a party to any"  "agreements under which the Defendant was required to hold payments it received from a customer in trust or in escrow for a provider of goods or services of the Defendant or the Defendant's customer," and "it is not party to any" "agreements under which the Defendant was required to segregate payments it received from a customer for the benefit of a provider of goods or services of the Defendant or the Defendant's customer."  The Defendant's admissions are corroborated by Mr. Kelley's testimony.

The Defendant also acknowledges that it is not in possession of (a) any documents supporting the allegations of paragraph 36 of the Amended Answer, (b) any documents obligating the Defendant to segregate the Transfers for the benefit of the Third-Parties, (c) any documents obligating the Defendant to hold the Transfers in trust for the benefit of the Third-Parties, and (c) any documents obligating the Defendant to hold the Transfers in escrow for the benefit of the Third-Parties.

Lastly, the Defendant's own schedule of transactions reflects that its payment practices with respect to the goods and services provided by the Third-Parties did not conform to the nature of the transactions that the Defendant proffers existed, because generally, it paid the non-affiliated Third-Parties either before or well after its receipt of the Transfers.

Thus, the Defendant has not, and cannot, satisfy its burden of proof on its alleged conduit defense.

**4.     The Defendant Was Not A Party
To Any Agreement With The Third-Parties
Creating A Conduit relationship**

"Where a transferee is 'not under any contractual or other obligation to use [transferred funds] for the benefit of [third parties,]' but rather, may use the funds freely, it is not a 'mere conduit.'" *In re Lenox Healthcare, Inc.,* 343 B.R. at 104.

In response to the Trustee's requests for admissions, the Defendant admits that it has no written agreement with the Third-Parties or the Debtor under which the Defendant was to serve as a conduit, or under which the Defendant was obligated to segregate the Transfers, to hold the Transfers in escrow, or hold the Transfers in trust for the benefit of the Third-Parties.

Each of the non-affiliated Third-Parties, Specialty, Mohawk and Eastern, have confirmed that they did not have any agreement with the Defendant that established a conduit relationship or under which they agreed to accept payment for the goods and services provided to the Defendant only if, and after, the Defendant received payment from the Debtor.  These facts are confirmed by Mr. Kelly's testimony.

Therefore, the Defendant cannot prove that it was a conduit for the Third-Parties.

**D.     The Defendant's Expert Reports Do Not Establish
An Objective Ordinary Course of Business Defense**

The only evidence offered by the Defendant to support its alleged defense under section 547(c)(2)(b) of the Bankruptcy Code are the two reports from Mr. Schaeffer.  For the reasons explained in the Trustee's Motion to Exclude those reports, they are not admissible under Rule 702 of the Federal Rules of Evidence because they are both irrelevant and unreliable.

Therefore, the Defendant has not, and cannot, offer admissible evidence to satisfy its burden of proof under section 547(g) of the Bankruptcy Code.

26

In the alternative, the only analysis offered by Mr. Schaeffer that is potentially relevant is his discussion of the Marine Cargo Handling industry which, at best, only is relevant to the $215,170.59 that the Defendant retained and did not pay to the Third-Parties.[1]  To the extent that the Court defers ruling on the request to exclude Mr. Schaeffer's reports as they pertain to the $215,170.59 of funds retained, the Trustee is still entitled to summary judgment on the balance of the Transfers, or $462,412.04, and reserves all rights to attack the reports on relevancy and reliability grounds at trial.

**E.      The Defendant Did Not Provide New Value**

The Defendant alleges that it is entitled to the new value defense for the limestone and value thereof referenced in Proof of Claim Number 48 and Proof of Claim Number 66.  Section 547(a)(2) of the Bankruptcy Code defines "new value" as "money or money's worth in goods, services, or new credit…" extended to or for the benefit of a debtor.

In its response to the Trustee's Requests for Admissions, the Defendant admits that the 9,142.33 tons of limestone referenced in its proofs of claim was not delivered to the Debtor's facility.   In her deposition, Ms. Hueth also confirmed that the 9,142.33 tons of limestone referenced in the Defendant's proofs of claim was not delivered to the Debtor.

As a matter of law, the Defendant did not provide, and the Debtor did not receive, new value after the Transfers.

<u>**CONCLUSION**</u>

For all of the following reasons, the Trustee respectfully requests that the Court enter summary judgment in favor of the Trustee on Counts One and Two of the Complaint.

---

[1] As explained above, the Defendant's president testified that he could not determine what percentage of the funds retained  are attributed to stevedoring services provided by the Defendant and what percentage are attributed to profit for arranging goods and services provided by the Third-Parties.

ME1 18890049v.1

Dated: September 12, 2014
      Wilmington, DE

**McCARTER & ENGLISH, LLP**

*/s/ Katharine L. Mayer*
Katharine L. Mayer (DE #3758)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE  19801
Telephone:  (302) 984-6300
Facsimile:  (302) 984-6399
kmayer@mccarter.com

     -and-

**FORMAN HOLT ELIADES & YOUNGMAN LLC**
Harry M. Gutfleish, Esq.
Matteo Percontino, Esq.
80 Route 4 East, Suite 290
Paramus, NJ 07652
Telephone: (201) 845-1000
Fax: (201) 845-9112
hgutfleish@formanlaw.com
mpercontino@formanlaw.com

*Counsel to Charles M. Forman,  the Chapter 7 Trustee*

ME1 18890049v.1

28