**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | : Chapter 7 |
| | : Case No. 11-10334 (KJC) |
| AES Thames L.L.C., | : |
| Debtor. | : |
| | : |
| Charles M. Forman, | : |
| Chapter 7 Trustee, | : |
| | : Adversary Proceeding |
| Plaintiff, | : No. 13-50406 (KJC) |
| | : |
| vs. | : |
| | : |
| P&M Brick LLC, | : |
| | : |
| Defendant. | : |

---

**TRUSTEE'S REPLY BRIEF IN SUPPORT OF MOTION TO EXCLUDE
EXPERT REPORTS**

---

**McCARTER & ENGLISH, LLP**
Katharine L. Mayer (DE #3758)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE  19801
Telephone:  (302) 984-6300
Facsimile:  (302) 984-6399
kmayer@mccarter.com

-and-

**FORMAN HOLT ELIADES & YOUNGMAN LLC**
Harry M. Gutfleish, Esq.
Matteo Percontino, Esq.
80 Route 4 East, Suite 290
Paramus, NJ 07652
Telephone: (201) 845-1000
Fax: (201) 845-9112
hgutfleish@formanlaw.com
mpercontino@formanlaw.com
*Counsel to Charles M. Forman, the Chapter 7 Trustee*

Dated:  October 3, 2014

ME1 18997899v.1

## TABLE OF CONTENTS

**Page No.**

TABLE OF AUTHORITIES…………………………………………………….. ii

RESPONSIVE ARGUMENT…………………....................................................... 1

    A.  The Defendant Does Not Contest The Trustee's  Relevancy
        Argument Relating to $462,412.04 Of The Transfers............................... 1

    B.  The Defendant Fails To Prove
        That The Reports Are Reliable...………….………………….............3

    C.  The Trustee is Not Required to Provide A Report
        To Rebut Mr. Schaeffer's Inadmissible Reports....................................... 9

CONCLUSION…………………………………………………………………... 9

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alexander v. Bonifay Manufacturing, Inc. (In re Terry Manufacturing Company, Inc.)*, 2005 U.S. Dist. LEXIS 27225 (M.D. Ala. Oct. 9, 2005) .................................................8

*Blue Cross and Blue Shield of Minnesota v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 78018 (D. Minn. June 4, 2013) ...............................................................8

*Coleman v. Am. Concrete, Inc. (In re Sportsman's Link, Inc.),* 2011 Bankr. LEXIS 2588 at *14 (Bankr. S.D. Ga. May 24, 2011) ...............................................................6

*Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993)...............................................................4,9

*Dietz v. Jacobs*, 2014 U.S. Dist. LEXIS 37144 (D. Minn. March 21, 2014) ................................6

*Holman Enters. v. Fid. & Guar. Ins. Co.*, 563 F. Supp. 2d 467 (D.N.J. 2008) ..............................4

*Kaye v. Agripool (In re Murray, Inc.)*, 2007 Bankr. LEXIS 4957 (Bankr. N.D. Tenn. Oct. 9, 2007) ...............................................................................................8

*Lightfoot v. Amelia Mar. Servs. (In re Sea Bridge Marine, Inc.),* 412 B.R. 868, 875-876 (Bankr. E.D. La. 2008) ...............................................................................5

*Maxwell v. Gartner Group* (*In re march FIRST, Inc.*), 2006 Bankr. LEXIS 2984 at * 9-10 (Bankr. N.D. Ill. Oct. 26, 2006).................................................................................8

*In re Nellson Nutraceutical, Inc.*, 2006 Bankr. LEXIS 3186 at *9 (Bankr. D.Del. Nov. 29, 2006)...............................................4

ME1 18997899v.1

**RESPONSIVE ARGUMENT**

A.   **The Defendant Does Not Contest The Trustee's**
     **Relevancy Argument Relating to $462,412.04 of the Transfers**

As set forth in the Trustee's[1] Opening Brief, the Defendant provided reports relating to alleged payment terms in three industries: (1) Crushed and Broken Limestone Mining and Quarrying - NAICS Code #212312; (2) Marine Cargo Handling - NAICS Code #488320; and (3) Brick, Stone, and Related Construction Material Merchant Wholesalers - NAICS Code #423320.

The Defendant concedes, as it must, that it did not provide all of the goods and services for which it billed the Debtor and for which it received the Transfers.  As the Defendant explains, it arranged for limestone to be purchased from Specialty Minerals Inc. ("Specialty"), then arranged for Carver Sand & Gravel LLC ("CS&G") to truck the limestone from Specialty to the Defendant's facility at the Port of Coeymans, and then arranged with Eastern Barge f/k/a White Near Coastal ("Eastern Barge") and Mohawk Northeast Inc.  ("Mohawk" and, together with Specialty, CS&G, Eastern Barge and Mohawk, the "Third-Parties") to transport the limestone from the Port of Coeymans to the Debtor's facility in Connecticut.  During the course of these transactions, the Defendant only provided stevedoring services, which consisted of loading the limestone onto barges operated by Eastern Barge and Mohawk.  The Defendant did not mine or quarry the limestone that the Defendant delivered to the Debtor.

The Defendant also represents that of the $607,482.63 in Transfers that it received from the Debtor, $462,412.04 was allocated to Specialty for the limestone, to CS&G for its trucking services, and to Eastern and Mohawk, for their barging services, to satisfy the Defendant's independent obligations to the Third-Parties.  At best, only $215,170.59 of the Transfers were allocated to services covered by the three industries identified in Mr. Schaeffer's reports.

---

[1] Defined terms have the same meanings as in the Trustee's Opening Brief.

ME1 18997899v.1

During his deposition, Mr. Schaeffer acknowledged that when he prepared his reports, he did not know whether the Defendant acquired the limestone from another entity and re-sold it to the Debtor. *See,* Gutfleish Declaration, Exhibit Q, page 119. Mr. Schaeffer also acknowledged that when he prepared his reports, he did not know whether his inclusion of the Brick, Stone, and Related Construction Material Merchant Wholesalers industry applied to the Debtor's transactions with the Debtor. *Id.* Rather, all that Mr. Schaeffer knew was that the Defendant supplied limestone to the Debtor. *Id.*

As explained above, the Defendant did not mine or quarry the limestone delivered to the Debtor. The Defendant does not dispute this fact.

In the Amended Answer, the Defendant alleges that "Specialty Minerals, Inc. provided the minerals and/or specialty stone materials shipped to the Debtor or obtained on the Debtor's behalf" and that the Defendant was "acting as an agent on behalf of" Specialty and the other Third-Parties. *See* Gutfleish Certification, Exhibit B at ¶¶ 30, 38. In his deposition, Mr. Schaeffer conceded that he did not review the Defendant's initial answer or any of the pleadings filed by the Defendant in this adversary proceeding. Gutfleish Certification, Exhibit Q, pages 119-120. He also admitted that the transactions alleged in the Amended Answer did not fall within the Brick, Stone, and Related Construction Material Merchant Wholesalers industry, and that his analysis of that industry was not applicable to the transactions alleged in the Amended Complaint or to the Transfers. *Id.* at pages 120-122. The Defendant does not dispute this fact.

Thus, two of industries included in Mr. Schaeffer's reports -- the Crushed and Broken Limestone Mining and Quarrying - NAICS Code #212312 and the Brick, Stone, and Related Construction Material Merchant Wholesalers - NAICS Code #423320 -- do not apply to the transactions at issue in this adversary proceeding or to the Transfers.

ME1 18997899v.1

This Court should exclude Mr. Schaeffer's reports because, in Mr. Schaeffer's own words, they are not relevant to the transactions between the Defendant and the Third-Parties and the Debtor's payment for those services, which account for $462,412.04 of the Transfers.

The Defendant does not offer an affidavit (from Mr. Schaeffer or otherwise), testimony excerpts, or evidence in rebuttal. Instead, the Defendant ignores this issue altogether. For the reasons set forth in his Opening Pleadings and herein, the Trustee submits that this Court should exclude Mr. Schaeffer's reports since they are not relevant to the transactions involving the Third-Parties or the $462,412.04 that the Debtor paid to the Defendant, and that the Defendant allocated to its independent obligations to the Third-Parties.

While the Trustee acknowledges that Mr. Schaeffer's reports might be relevant to the stevedoring services rendered by the Defendant, the reports should be excluded as unreliable. Also, to date, the Defendant has failed to identify whether the $215,170.59 of the Transfers that it allocated to itself, is attributable to stevedoring services provided, the profit charged by the Defendant in connection with the goods and services provided by the Third-Parties, or both.

**B.      The Defendant Fails To Prove
         That The Reports Are Reliable**

RMA, the sole source of data on which Mr. Schaeffer relies, expressly cautions users that its data (a) should be used "only as general guidelines and not as absolute industry norms," (b) is "not selected by any random or statistically reliable method," (c) "[a] relatively small sample can increase the chances that some composites do not fully represent an industry," (d) the presence of outlier statements can cause "a disproportionate influence on the industry composite," and (e) should only be used "as a supplement to the other methods of financial analysis."

If the RMA data is not statistically reliable, how can anyone construct a reliable opinion about the "normal business terms" in any given industry? Likewise, how can a report that relies

ME1 18997899v.1

solely on data that the author says is not reliable for a given purpose, be used (and be reliable) for just such a purpose?

In the face of this conundrum, the Defendant argues that the Trustee has not demonstrated that the data on which Mr. Schaeffer relies suffers from any of the stated deficiencies.  This argument must be rejected since it turns the parties' burdens upside down. The burden is placed squarely on the Defendant, as the proponent, to demonstrate by a preponderance of the evidence that Mr. Schaeffer's opinions are admissible. *Daubert v. Merrell Dow Pharms*., 509 U.S. 579, 592 (1993); *Holman Enters. v. Fid. & Guar. Ins. Co.*, 563 F. Supp. 2d 467, 471 (D.N.J. 2008); *In re Nellson Nutraceutical, Inc.*, 2006 Bankr. LEXIS 3186 at * 19 (Bankr. D. Del. Nov. 29, 2006).

As set forth in the Trustee's Opening Brief, RMA advises that its data was not collected in a statistically reliable manner.  The Trustee also explains that Mr. Schaeffer did not, and cannot, test the reliability of his data because, among other reasons, (1) the companies providing the data are not identified, (2) the number of companies in the United States engaged in each industry is not provided, (3) RMA does not opine on whether any or all statements in its data are outliers.  The Defendant does not dispute those facts.

Indeed, the very excerpts cited by the Defendant show that Mr. Schaeffer did not and could not provide any independent analysis, that he did nothing to test the RMA data and that he merely regurgitated the anonymous data.  Those excerpts, and the excerpts included in the Trustee's Opening Brief, further reflect that (a) the sales receivable ratio included in the RMA reports does not measure the number of days from invoice to payment, (b) Mr. Schaeffer could not identify any of the companies in each industry that fell within the asset range applicable to the Defendant, (c) Mr. Schaeffer thought that the companies in the similar asset range for the

4

Defendant were statistically too small, (d) Mr. Schaeffer could not ascertain the number of the companies that fall within the same geographical area as the Defendant, (e) Mr. Schaeffer did not limit the RMA data to companies that would have similar gross sales as the Defendant even though he has issued such reports in other matters, and (f) Mr. Schaeffer did not know whether the number of companies reflected in each of the RMA reports comprised a large enough percentage of the total companies in each industry to yield a statistically or reliable analysis.

In *Lightfoot v. Amelia Mar. Servs. (In re Sea Bridge Marine, Inc.),* 412 B.R. 868, 875-876 (Bankr. E.D. La. 2008), the court excluded an expert's opinion where the expert relied upon RMA data and, in addition, interviewed a representative of one company in the relevant industry, and reviewed publically filed, year-end financial statements from other companies in the industry. In reaching its conclusion, the court found that neither the RMA data nor the information in the other companies' statements evidenced a "days to pay" standard. *Id.* at 876. As in this adversary proceeding, the RMA data in *Lightfoot* merely provided a snap shot of one-day's receivables to total annual sales. *Id.; see also* Gutfleish Certification, Exhibit R at page 14. The court also explained that the expert "failed to obtain information on extensions of credit, repayment programs, or collection activities common within the industry." *Id.* Thus, the court held that the "one-dimensional analysis is not sufficient to establish the industry practice with regard to marine fuel supply credit arrangements." *Id.*

In the reports proffered in this adversary proceeding, Mr. Schaeffer did not look to sources of information other than RMA to test or confirm RMA's data. In fact, Mr. Schaeffer's reports are far less one-dimensional than the *Lightfoot* report.

In *Coleman v. Am. Concrete, Inc. (In re Sportsman's Link, Inc.),* 2011 Bankr. LEXIS 2588 at *14 (Bankr. S.D. Ga. May 24, 2011), the court explained that an expert's reliance on

5

RMA data[2] alone makes an expert's opinion "of questionable reliability," "entitled to little weight," and "beset by too many gaps."  The court also found that, and as RMA itself directs, that use of the "RMA analysis would ordinarily lead to further due diligence...."  Id. at *13.

Notwithstanding the deficiencies in Mr. Schaeffer's reports, the Defendant relies on *Dietz v. Jacobs*, 2014 U.S. Dist. LEXIS 37144 (D. Minn. March 21, 2014) as support for the admission of Mr. Schaeffer's reports.  The Trustee submits that the *Dietz* decision is contrary to applicable law, suffers from illogical lapses, and fails to provide support its primary findings.

In *Dietz,* the court acknowledged that RMA advised that its data should not be used to determine absolute industry norms.  2014 U.S. Dist. LEXIS 37144 at *13.  The court also recognized that RMA disseminated cautionary limitations with its industry data.  *Id.*  While the court refused to identify those cautionary limitations, *see id.*, those delivered with the RMA data on which Mr. Schaeffer relied for his reports in this adversary proceeding included the following:

> **Recommended for Use as General Guidelines:**  RMA recommends you use Annual Statement Studies: Financial Ratio Benchmarks data only as general guidelines and not as absolute industry norms.  There are several reasons why the data may not be fully representative of a given industry:
>
> 1. **Data Not Random -** The financial statements used in the *Annual Statement Studies: Financial Ratio Benchmarks* are not selected by any random or statistically reliable method.  RMA member banks voluntarily submit the raw data they have available each year with no limitation on company size.
>
> 2. **Categorized by Primary Product Only -** Many companies have varied product lines; however, the *Annual Statement Studies: Financial Ratio Benchmarks* categorizes them by their primary product NAICS number only.
>
> 3. **Small Samples -** Some of the industry samples are small in relation to the total number of firms for a given industry.  A relatively small sample can increase the chances that some composites to not fully represent an industry.

---

[2]The data relied on was the inventory turnover ratio.  In this case, Mr. Schaeffer relies solely on the receivables turnover ratio.

4. **Extreme Statements -** An extreme or outlier statement can occasionally be present in a sample, causing a disproportionate influence on the industry composite. This is particularly true in a relatively small sample.

5. **Operational Differences -** Companies within the same industry may differ in their method of operations, which in turn can directly influence their financial statements. Since they are included in the sample, these statements can significantly affect the composite calculations.

6. **Additional Considerations -** There are other considerations that can result in variations among different companies engaged in the same general line of business. These include different labor markets, geographical location, different accounting methods, quality of products handled, sources and methods of financing, and terms of sale.

The court failed to explain why it chose to ignore these cautionary limitations solely because RMA touted itself as the most respected source of industry data. *Id.*

Even more problematic, the court improperly placed the burden on the movant to demonstrate why the RMA data suffered from any of the deficiencies identified by RMA, rather than placing the burden on the proponent to prove reliability and admissibility. *Id.* at \*18 ("Defendants have not identified any basis for finding that any of the potential issues with RMA data in fact are present in the data set on which Mr. Schaeffer relied"). It is also important that the court found that the movant's expert relied on the very same RMA data as a check to his opinions. *Id.* at \*17.

Finally, while the court acknowledged that other courts have refused to admit reports relying solely on RMA data, it also held that the decisions "only show that certain applications of RMA data may be inappropriate in the context of a case or insufficient to meet a party's burden of proof under the circumstances involved." *Id.* at \*15.

The other decisions cited by the Defendant do not support admission of Mr. Schaeffer's reports. In *Alexander v. Bonifay Manufacturing, Inc. (In re Terry Manufacturing Company, Inc.)*, 2005 U.S. Dist. LEXIS 27225 (M.D. Ala. Oct. 9, 2005), the court did not analyze an

7

expert's report or objections thereto.  Rather, the court explained that "[t]he sole issue on appeal is whether the bankruptcy court gave appropriate weight to the long-standing business relationship between Bonifay and Terry....."  *Id.* at *5-6. The court did acknowledge, however, that the expert analyses included data from two independent research organizations, Risk Management Association and Credit Research Foundation. *Id.* at  *5.

The court's decision in *Kaye v. Agripool (In re Murray, Inc.)*, 2007 Bankr. LEXIS 4957 (Bankr. N.D. Tenn. Oct. 9, 2007) was reversed on appeal, 392 B.R. 288 (6th Cir. B.A. P. 2008) because Mr. Schaeffer did not provide support for his opinions.

In *Maxwell v. Gartner Group* (*In re march FIRST, Inc.)*, 2006 Bankr. LEXIS 2984 at * 9-10 (Bankr. N.D. Ill. Oct. 26, 2006), the court found that the defendant failed to establish its ordinary course of business defense because it submitted an affidavit of its vice-president that lacked evidentiary support.  Then, without any discussion, the court gratuitously referenced an unidentified study prepared by RMA. *Id.* at *10-11.

In *Blue Cross and Blue Shield of Minnesota v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 78018 (D. Minn. June 4, 2013), the court analyzed RMA data regarding securities lending transactions.  While the court denied the motion to exclude the reports, the decision provides no insight into the reports in question, or whether data is similar to the data on which Mr. Schaeffer relies in the reports proffered in this adversary proceeding.

Thus, the Defendant still has not proven, as a matter of fact or law, that Mr. Schaeffer's reports meet the reliability standards required to be admissible in this adversary proceeding.

8

**C.** **The Trustee Is Not Required To Provide A Report**
**To Rebut Mr. Schaeffer's Inadmissible Reports**

In Point II of its brief, the Defendant argues that the Trustee's Motion must be denied

because the Trustee has not provided a rebuttal expert report. *Daubert* and its progeny lay the

groundwork for the Court to determine if an expert's report is admissible. Those decisions do not

require a rebuttal report.

## CONCLUSION

For the reasons set forth herein and in his opening pleadings, the Trustee respectfully

requests that the Court exclude, and refuse to admit into evidence, Mr. Schaeffer's reports.

**McCARTER & ENGLISH, LLP**

Dated: October 3, 2014          */s/ Katharine L. Mayer*
          Wilmington, DE          Katharine L. Mayer (DE #3758)
                    Renaissance Centre
                    405 N. King Street, 8th Floor
                    Wilmington, DE 19801
                    Telephone: (302) 984-6300
                    Facsimile: (302) 984-6399
                    kmayer@mccarter.com

                         -and-

                    **FORMAN HOLT ELIADES & YOUNGMAN LLC**
                    Harry M. Gutfleish, Esq.
                    Matteo Percontino, Esq.
                    80 Route 4 East, Suite 290
                    Paramus, NJ 07652
                    Telephone: (201) 845-1000
                    Fax: (201) 845-9112
                    hgutfleish@formanlaw.com
                    mpercontino@formanlaw.com
                    *Counsel to Charles M. Forman,*
                    *the Chapter 7 Trustee*

ME1 18997899v.1